384 A.2d 936

**COMMONWEALTH of Pennsylvania ex rel. Brandon Odel WITHERSPOON and Blake Austin Witherspoon, by Daniel Thomas, their natural father and next friend**

**v.**

**Justine WITHERSPOON, Appellant.**

Superior Court of Pennsylvania.

Argued June 20, 1977.

Decided April 13, 1978.

**590**

Paul M. Lewis, Philadelphia, with him Leonard Sarner, Philadelphia, for appellant.

John C. Marston, Cornwells Heights, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, President Judge:

This appeal arises from the order of the court below granting appellee's habeas corpus petition for permanent custody of his two minor sons, Brandon, age five, and Blake, age four. Appellant, the maternal grandmother of the children, contends that the court erred in its determination that the children's best interests require their placement in the custody of their natural father. Our review of the record compels us to agree with the learned trial judge, and we therefore affirm the order of the lower court.

■ The rules of law controlling our determination of this controversy are clear. Of paramount concern in child custody cases, regardless of the status of the disputing parties, is the best interest and welfare of the child. *Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 444, 292 A.2d 380 (1972); *Commonwealth ex rel. Johnson v. Pinder,* 217 Pa.Super. 180, 269 A.2d 511 (1970). Also in operation in the present case, however, is the corollary proposition that in custody disputes between a natural parent and a third party, the natural parent has a prima facie right to custody which may be forfeited if convincing reasons appear that the

child's best interests will be served by awarding custody to someone else. *In re Custody of Hernandez,* 249 Pa.Super. 274, 376 A.2d 648 (1977); *In re Custody of Myers,* 242 Pa.Super. 225, 363 A.2d 1242 (1976).

■ The court below, after taking extensive testimony from all concerned parties, measured the evidence by these legal principles and concluded that under either standard, the father was entitled to custody of the children. Our scope of review of this determination is of the broadest type, and, while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it. *Commonwealth ex rel. Gifford v. Miller,* 213 Pa.Super. 269, 273–74, 248 A.2d 63 (1968). Nevertheless we find from our independent examination of the testimony that the record adequately supports the findings and conclusions of the court below.

Daniel Thomas, the appellee, began dating Barbara Witherspoon in 1963. Two sons were born as the result of this relationship. Although the father and mother never married, and did not live together for any extended period of time, the parents were with the children four or five times a week, until the mother became ill in 1974. Barbara Witherspoon died of cancer in November, 1974, and from that time until the present, the children have been in the custody of Justine Witherspoon, their maternal grandmother.

The father testified that he has been regularly employed since his honorable discharge from the Army in 1962, and is currently part owner in a licensed Volkswagen conversion business in Philadelphia, where he works from 8:00 A.M. until 4:30 P.M. weekdays. His annual income from this employment is approximately $14,000.00 per year. He maintains a two bedroom apartment in Cornwells Heights and pays a housekeeper $85.00 per week to cook and clean for him. Although this housekeeper does not live with appellee, but keeps an apartment for herself and her four-year old son, she testified that she would be available on a full time

basis to care for the children during the time the father works, if he is awarded custody. Appellee's mother, who lives nearby, is also available to help with the children if needed.

However, not all the testimony concerning the father's fitness to raise his children was so encouraging. He admitted on cross-examination that he had been convicted of aggravated robbery, for which he served approximately seven months of a one to five year sentence, and fraudulent use of credit cards, which was on appeal during the custody hearings. Additionally, he was once arrested, but subsequently acquitted, on a charge of rape. While these circumstances cause us serious concern in relation to the welfare of the children, we find them, on balance, insufficiently convincing in this case to destroy the basic relationship between parent and child. An examination of the appellant's situation buttresses this conclusion.

Justine Witherspoon, the appellant, has had the children in her custody and care since Barbara Witherspoon's illness. Justine is fifty-three years old and owns her own home in Levittown. She was steadily employed as a nurse's aide at Lower Bucks Hospital, earning $105.00 per week, until March, 1975, when she fell at work and injured her back. Since that time she has not worked, but has received welfare and social security payments for herself and the children.

Justine's daughter, also named Justine, lives with her mother, and pays her $60.00 per week for board and household expenses. The younger Justine is thirty years old and is employed as a licensed practical nurse at Lower Bucks Hospital. She has a ten-year-old illegitimate daughter who lives with her and her mother. The most disruptive and disturbing influence in this context is the presence of Henry Lewis, who was young Justine's boyfriend for approximately eight years. A frequent visitor to the Witherspoon home until recently, Henry Lewis played with the children three or four times a week. He has been convicted of rape and

armed robbery, for which he served time in prison, and has also been arrested for violation of parole. Appellant testified that Henry Lewis is no longer a visitor to her home because he was shot outside the bar where he works, near the Witherspoon home. This shooting shortly followed a prior incident when an unknown individual shot at Lewis while he was riding with the younger Justine in her car. Fortunately, only the car was damaged, and the children were not with Lewis and Justine at the time.

Young Justine had another boyfriend, one Marshall Handon, who visited the Witherspoon home while Henry Lewis was in prison. Handon is no longer a visitor to the home, as at the time of the hearings he was incarcerated in a federal prison.

As a counterpoint to these destabilizing influences, appellant presented Fred Witherspoon, her thirty-four-year-old son. He is married, has three children, and is steadily employed as a machinist and part-time school bus driver. Although he is an exemplary influence, we are inclined to agree with the court below that Fred Witherspoon's occasional visits to appellant's home are an insufficient basis upon which to regard him as surrogate father to the children. Moreover, the trial judge aptly noted that while appellant is without question a sincere and well-meaning woman who truly loves the children, the circumstances surrounding her situation are not in the best interests of Brandon and Blake. These facts, coupled with the fact that insufficient reasons were proved to deprive the natural father of custody, compel the conclusion that the court did not err in awarding custody to appellee. *See, e. g., Auman v. Eash,* 228 Pa.Super. 242, 323 A.2d 94 (1974).

Accordingly, the order of the lower court is affirmed.

SPAETH, J., concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.