610 A.2d 999

**Thomas GRADWELL and Emma Gradwell, Luther T. Strausser, Appellants,**

v.

**Luther D. STRAUSSER and Emma A. Strausser.**

Superior Court of Pennsylvania.

Argued April 8, 1992.

Filed June 3, 1992.

120

Chester C. Corse, Jr., Pottsville, for appellants.

K. Tucker Landon, Pottsville, for appellee.

Before McEWEN, CIRILLO and CERCONE, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Schuylkill County dismissing Appellants' complaint for custody. We affirm.

Appellants, Thomas Gradwell and his wife, Emma Gradwell, the maternal grandparents ("grandparents") of Lynn Anne Strausser, sought legal custody of Lynn Anne, presently age 15. The grandparents instituted this action against Luther D. Strausser and Emma A. Strausser, Lynn Anne's natural parents. The parents filed an answer with new matter, requesting legal and physical custody of Lynn Anne.

At the time this action was commenced, physical custody of the Lynn Anne was with the paternal grandfather, Luther T. Strausser ("Luke"). Legal custody was with the parents. The parents also had the right to partial custody

and visitation. This custody arrangement was pursuant to a temporary court order entered on August 2, 1990.[1]

On August 29, 1990, following a hearing, the court entered a second temporary order vacating the prior order and transferring legal and physical custody of Lynn Anne to her parents pending further court action. On February 19, 1991, the grandparents and Luke filed a motion requesting that testimony be taken and that the agency rendering family counseling to the parties report on the parents' status. *See* 23 Pa.C.S. § 5305.[2] A conference was held, and on September 10, 1991 the court entered an order granting the parents' motion to dismiss the proceedings. This appeal followed. Appellants, the maternal grandparents, and Luke, the paternal grandfather, raise the following issues:

1. Do maternal and paternal grandparents have standing to institute a civil action seeking custody, partial custody, or visitation with a minor child?

2. Did the trial court err in denying paternal grandfather partial custody or visitation with the minor child where the grandfather and stood in loco parentis to the minor and they had lived together for over a twelve month period?

3. Assuming but not conceding the trial court's ruling on standing is correct, did the trial court err in not transferring this matter to the juvenile section of the court?

■    Persons other than natural parents are "third parties" for purposes of custody disputes. *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977). *See also Commonwealth ex rel. Witherspoon v. Witherspoon,*

---

**1.** The court ordered the plaintiffs to join Luther as a party to the action. *See* Pa.R.C.P. 1915.6. Rule 1915.6 incorporates the provision of the Uniform Child Custody Jurisdiction Act, 42 Pa.C.S. § 5351, which requires a person not a party who has physical custody of the child to be joined as a party and notified of the pending action.

**2.** Section 5305 of the Domestic Relations Code provides that the court may require the parents to attend counseling sessions prior to a custody determination. 23 Pa.C.S. § 5305.

252 Pa.Super. 589, 384 A.2d 936 (1978). "Although the best interest of the child remains of paramount concern, the parent has 'a prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party.... the evidentiary scale is tipped, and tipped hard, to the parents' side[.]" *Hernandez*, 249 Pa.Super. at 286, 376 A.2d at 654. The courts have noted the distinction between non-related third parties and related third parties, but have declined to draw a distinction in the burden of proof to each. *Id.*, 249 Pa.Superior Ct. at 287, 376 A.2d at 654. *See also Commonwealth ex rel. Patricia L.F. v. Malbert J.F.*, 278 Pa.Super. 343, 420 A.2d 572 (1980).

Absent a prima facie right to custody, a third party lacks standing to seek custody as against the natural parents. *Helsel v. Blair County Children and Youth Services*, 359 Pa.Super. 487, 519 A.2d 456 (1986). If we were to grant standing to third parties under these circumstances,

> a parent's prima facie right to custody could thus be challenged without a clear and convincing showing that the child is not receiving proper parental care. This is not appropriate when the party seeking custody lacks a legal basis to claim custody equal with that of a parent. It is an unacceptable means of circumventing the procedures established to determine the necessity of forfeiting parental rights.

*Id.*, 249 Pa.Superior Ct. at 496, 519 A.2d at 460. *See also Weber v. Weber*, 362 Pa.Super. 262, 524 A.2d 498 (1987); *Herron v. Seizak*, 321 Pa.Super. 466, 468 A.2d 803 (1983).

The appropriate manner for a third party to challenge child custody is through dependency proceedings, set forth in the Judicial Code. *See* 42 Pa.C.S. § 6301 *et seq.; Helsel, supra.* It is only after a child is found dependent that a court will engage in custody proceedings where the standard is the best interests of the child. *Helsel, supra; see also Bishop v. Piller*, 399 Pa.Super. 52, 581 A.2d 670 (1990). Prior to that, the burden is on the party seeking to take the child from the parents to show by clear and

convincing evidence that the child is dependent. 42 Pa.C.S. § 6341(c); *Helsel, supra. See also Ellerbe v. Hooks*, 490 Pa. 363, 367, 416 A.2d 512, 513 (1980); *Commonwealth ex rel. Kraus v. Kraus*, 185 Pa.Super. 167, 170, 138 A.2d 225, 226–27 (1958); *cf. In re Miller*, 380 Pa.Super. 423, 552 A.2d 261 (1988) (under Juvenile Act, child may be adjudicated dependent when it is established by clear and convincing evidence that child is without proper parental care and such care is not immediately available). Unless the parents' prima facie right to custody is successfully overcome, this court cannot confer standing on third parties to interfere with the parent/child relationship. *See* 42 Pa.C.S. §§ 6301 *et seq.*

In *Palmer v. Tokarek*, 279 Pa.Super. 458, 421 A.2d 289 (1980), this court affirmed an award of custody to a father in a contest with the maternal grandparents. The child's parents were divorced. The father was awarded custody despite the fact that his seven-year old son had lived almost his entire life with the maternal grandparents, had been well cared for by them and wished to remain with them. The trial court had stated in its opinion that "if the parties stood in equal position" it would have awarded custody to grandparents. *Id.*, 279 Pa.Superior Ct. at 465, 421 A.2d at 293.

*Palmer* graphically illustrates the rationale supporting the exacting standard of proof. The courts, in order to promote and protect the policy of protecting the parent/child relationship, will hesitate to interfere absent clear evidence that the child's welfare so demands. Only then may the courts intrude upon the parents' natural and primary right to rear and care for their child. *Cf. Snarski v. Krincek*, 372 Pa.Super. 58, 538 A.2d 1348 (1988) (parents divorced; child lived with maternal grandparents and mother for six and one-half of his eight years; after mother died, father sought custody; the court awarded custody to the maternal grandparents, subject to father's right to partial custody).

■ A third party has been permitted to maintain an action where that party stands in loco parentis, that is,

where he or she has "assumed obligations incident to the parental relationship." *See, e.g., Commonwealth ex rel. Patricia L.F. v. Malbert J.F.,* 278 Pa.Super. 343, 420 A.2d 572 (1980); *Commonwealth ex rel. Gorto v. Gorto,* 298 Pa.Super. 509, 444 A.2d 1299 (1982); *Jones v. Stone,* 343 Pa.Super. 416, 495 A.2d 205 (1985); *Burke v. Pope,* 366 Pa.Super. 488, 531 A.2d 782 (1987). The rights and obligations arising out of that relationship are exactly the same as between parent and child. *Spells v. Spells,* 250 Pa.Super. 168, 378 A.2d 879 (1977).

█ Luke argues that he should be permitted to maintain this action because he stands in loco parentis with respect to Lynn Anne. Specifically, Luke contends that he has resided with Lynn Anne for a length of time and, therefore, he has overcome the natural parents' prima facie right to custody. We disagree.

The phrase "in loco parentis" refers to a person who puts himself in the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of "in loco parentis" embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties.

*Commonwealth ex rel. Morgan v. Smith,* 429 Pa. 561, 565, 241 A.2d 531, 533 (1968). The trial court found that Luke had resided with Lynn Anne *and her parents* for almost two years. Thereafter, Lynn Anne resided with Luke, without her parents, for a period of three months. Lynn Anne and Luke evidently had a very warm and caring relationship. Lynn Anne stated that she preferred Luke's supervision over that of her parents, and stated that she would rather live with her grandparents than with her parents. Lynn Anne characterized her parents as more rigid in their discipline than Luke or her maternal grandparents.

█ The level of discipline is doubtless a strong consideration to a child in determining a preference. This is especially true during adolescent years when the child ex-

periments with independence from his or her parents. A child's stated preference to live with a grandparent, however, cannot outweigh the parents' prima facie right to custody. *Palmer, supra.* Without more, a child's preference and the fact that the child and grandparent resided together for a period of time is insufficient to support a finding that Luke stood in loco parentis and has overcome the parents' prima facie right to custody. A third party cannot place himself in loco parentis status in defiance of the parents' wishes and the parent/child relationship.

■ Sections 5311, 5312 and 5313 of the Domestic Relations Code [3] provide grandparents or great-grandparents with a right of action for partial custody or visitation under certain circumstances—when a parent is deceased, 23 Pa. C.S. § 5311, when the parents are separated or divorced, 23 Pa.C.S. § 5312, or when a child has resided with his or her grandparents for a period of twelve months or more and is thereafter removed by the parents, 23 Pa.C.S. § 5313. Under these conditions, the grandparents may petition for an order granting reasonable partial custody or visitation rights, or both. "The court shall grant the petition if it finds that [partial custody or] visitation rights would be in the best interest of the child and would not interfere with the parent-child relationship." *Id.*[4] *See Albright v. Commonwealth ex rel. Fetters*, 491 Pa. 320, 328, 421 A.2d 157,

3. The prior law, The Custody and Grandparents Visitation Act, Act of November 5, 1981, P.L. 322, No. 115 § 2; 23 P.S. § 1001 *et seq.*, was repealed and essentially reenacted in the Domestic Relations Code, 23 Pa.C.S. §§ 5301 *et seq.*

4. The terms "partial custody" and "visitation" are often used interchangeably. Each term, however, has a distinct legal meaning. *See* 23 Pa.C.S. § 5302. Partial custody refers to the right to take possession of a child away from the custodial person for a specified period of time; visitation is the right to visit with a child without physically removing the child from the custodian. *Id.; Commonwealth ex rel. Zaffarano v. Genaro*, 500 Pa. 256, 259, 455 A.2d 1180, 1182 (1983); *Scott v. Scott*, 240 Pa.Super. 65, 368 A.2d 288 (1976) (Spaeth, J., concurring). *See also Note, Visitation Rights of a Grandparent Over the Objection of a Parent; The Best Interest of the Child*, 15 J.Fam.L. 51 (1976–77).

161 (1980); *see also Altus–Baumhor v. Baumhor*, 407 Pa.Super. 276, 595 A.2d 1147 (1991).

▪ Luke maintains that he has acquired in loco parentis status and has overcome the parents' prima facie right to custody because he has met the statutory period of residing with his granddaughter. 23 Pa.C.S. § 5313. This argument confuses the status of in loco parentis, which may enable a third party to maintain a custody action, with section 5313 of the Domestic Relations Code, which pertains to partial custody or visitation rights of grandparents and great-grandparents.

Section 5313 provides:

If an unmarried child has resided with his grandparents or great-grandparents for a period of 12 months or more and is subsequently removed from the home by his parents, the grandparents or great-grandparents may petition the court for an order granting them reasonable partial custody or visitation rights, or both, to the child. The court shall grant the petition if it finds that visitation rights would be in the best interest of the child and would not interfere with the parent-child relationship.

23 Pa.C.S. § 5313.

Luke misapprehends both the purpose and application of the statute. Section 5313 does not contemplate overcoming the parents' prima facie right to custody or providing a presumption of in loco parentis status. The statute provides a right of action only for *partial custody or visitation* under certain circumstances. The legislature intended to assure "continuing contact of the child or children with grandparents *when a parent is deceased, divorced, or separated*." 23 Pa.C.S. § 5301.[5] The statute was enacted to protect against estrangement that might occur after one

5. Although not stated in the declared purpose of this chapter of the Domestic Relation Code, we do not construe this statement to preclude a grandparent or great-grandparent from seeking relief under section 5313 in a situation, like the one before us, where the parents are both alive, and are neither separate nor divorced. *See* note 6, *infra; cf. Bucci v. Bucci*, 351 Pa.Super. 457, 506 A.2d 438 (1986) (father serving a prison sentence).

parent dies, or after the parents separate or divorce and custody of the child is with one parent, or after the child has lived with the grandparents for a significant period of time and is removed by the parents. *See, e.g., Commonwealth ex rel. Zaffarano v. Genaro,* 500 Pa. 256, 455 A.2d 1180 (1983) (mother deceased); *Bucci v. Bucci,* 351 Pa.Super. 457, 506 A.2d 438 (1986) (father serving prison term; court stated marriage was "dissolved" and granted paternal grandparents' petition for visitation); *Suroviec v. Mitchell,* 347 Pa.Super. 399, 500 A.2d 894 (1985) (children had resided with maternal grandparents for three years before mother's death; grandparents petition for visitation granted); *Palmer v. Tokarek,* 279 Pa.Super. 458, 421 A.2d 289 (1980) (parents divorced); *Johnson v. Pinder,* 217 Pa.Super. 180, 269 A.2d 511 (1970) (mother deceased); *Commonwealth ex rel. Insalaco v. Delconte,* 201 Pa.Super. 354, 192 A.2d 750 (1963) (mother deceased); *Commonwealth ex rel. Sabath v. Mendelson,* 187 Pa.Super. 73, 143 A.2d 665 (1958) (mother deceased).[6]

The statutory rights created under section 5311–5313 provide a means for grandparents or great-grandparents on the non-custodial side to guard against potential estrangement. The statute, however, speaks to *partial custody* or *visitation;* it does not provide a right of action for custody. We find, therefore, that section 5313 is not applicable to the matter before us. The complaint, though captioned "Complaint for Visitation," sought physical and legal custody in the prayer for relief. The trial judge disposed of this matter as a custody dispute, and consequently the appellants have argued the case on appeal as such.

**6.** We note that our research has revealed no cases in which section 5313 or its predecessor, 23 P.S. § 1014, has been applied where the parents are both alive and they are neither separated nor divorced. *See Bishop v. Piller,* 399 Pa.Super. 52, 581 A.2d 670 (1990); *Snarski v. Krincek,* 372 Pa.Super. 58, 538 A.2d 1348 (1988); *Suroviec, supra; Ferencak v. Moore,* 300 Pa.Super. 28, 445 A.2d 1282 (1982). *Cf. Bucci v. Bucci,* 351 Pa.Super. 457, 506 A.2d 438 (1986); Obviously, the likelihood of potential estrangement in the grandparent/grandchild relationship is decreased under these circumstances, and increased where one parent dies or if the parents separate or divorce.

■■■ Unless dependency proceedings are initiated, 42 Pa.C.S. §§ 6351, 6352, or the parents rights are involuntarily terminated, 23 Pa.C.S. § 2511, or the child is abused, 23 Pa.C.S. § 6301 *et seq., or the grandparents are seeking partial custody or visitation rights and meet the statutory requirements of 23 Pa.C.S. §§ 5311–5313*, we are powerless to interfere with this intact family. *Cf. Herron v. Seizak,* 321 Pa.Super. 466, 470, 468 A.2d 803, 805 (1983) ("[A]ppellants ... would have the court direct parents, both of whom have chosen not to have their children visit the grandparents, to permit such visitation. Nothing in the case or statutory law legitimizes such an intrusion by the courts into family life.").

In *Herron, supra,* the court interpreted the predecessor act to section 5313, the Custody and Grandparents Visitation Act, in a visitation matter. In *Herron,* both parents were alive, the parents were not separated or divorced, and they lived together with the child. The court stated:

The "Custody and Grandparents Visitation Act" provides visitation rights to grandparents upon a finding by the court that visitation would be in the best interests of the child. The Act provides this right only in three circumstances: (1) when a parent is deceased; (2) when parents' marriage is dissolved; and (3) when the child has resided with grandparents for a period of twelve months or more.

*Herron,* 321 Pa.Super. at 469, 468 A.2d at 805. The court held that grandparents do not have standing to seek partial custody or visitation, over the parents' objection, unless they come within the purview of the Grandparents Visitation Act. Further, a court has no power to order grandparent visitation where both parents are alive, reside together with the child, and object to visitation. *Id.,* 321 Pa.Superior Ct. at 468, 468 A.2d at 804; *see also Weber v. Weber,* 362 Pa.Super. 262, 524 A.2d 498 (1987) (absent statutory authority, an adult sister does not have standing to bring an action for partial custody of a minor child over the objections of the minor child's parents).

As we noted above, the trial court disposed of this case as a custody matter. The court properly determined that the appellants had no standing to seek custody of the child, and we therefore affirm the trial court's order. It does not appear, however, that the matters of partial custody or visitation were addressed, despite the captioning of the appellants' complaint. In our estimation, further proceedings under section 5313 would prove fruitless,[7] and it would therefore be in the child's best interest to resolve these matters by amicable agreement.

Order dismissing complaint affirmed.

McEWEN, J., files a dissenting statement.

McEWEN, Judge, dissenting:

While the author of the majority Opinion has provided a persuasive expression of view, I am compelled to a differing. conclusion. Since Lynn Anne was not in the physical custody of her parents, but in the physical custody of her paternal grandfather, appellant Luther T. Strausser, on July 23, 1990, the date when her maternal grandparents, appellants Thomas and Emma Gradwell, instituted this action, and since appellant Luther T. Strausser retained physical custody of Lynn Anne pursuant to court orders of July 23, 1990, and August 2, 1990, I am not persuaded that appellants lacked standing. *See: Snarski v. Krincek,* 372 Pa.Super. 58, 538 A.2d 1348 (1988). Thus, I would remand the case to the trial court for the conduct of such proceedings as will enable the trial court to determine what custody arrangement will now serve the best interest of Lynn Anne.

7. The trial court found that Luke had not met the statutory time period under section 5313.