## ORDER

## W. v. S.

*Richard C. Snelbaker,* for plaintiffs.
*Joan Carey,* for defendant Sueann S.
*Samuel Paul S.,* in propria persona.

BAYLEY, *J.,* April 16, 1993—On January 8, 1993, H. Vance W., age 71, and Elsie H. W., age 69, (hereinafter referred to as grandparents) the maternal grandparents of Danielle Nicole S., born October 1, 1986, instituted this suit by a complaint against Danielle's parents, Sueann S. and Samuel Paul S., seeking primary physical custody of the child. The case was referred to a custody

conciliator. On March 18, the mother, Sueann S., filed a petition to dismiss the complaint, averring that the maternal grandparents lack standing to seek physical custody of Danielle. A hearing on that issue was held before this court on April 14. We find the following facts.

Danielle was born at a time when her mother and father were separated. The mother brought the child from the hospital to the grandparents' home where they lived until the end of September, 1987. At that time the mother reconciled with the father and she and the child moved in with him. When the parents again separated in June, 1990, the child remained with the mother in her apartment in Carlisle until the beginning of December, 1991. At that time the mother was evicted from the apartment and for about two weeks she lived in a motel while Danielle stayed with the grandparents. The mother then moved in with the grandparents and stayed there for about a month. She then moved out for about a month and a half with Danielle remaining at her grandparents.

In the latter part of February, 1992, the mother was in an automobile accident after which she moved back with the grandparents and Danielle. She started seeing George S. in May, 1992, and would occasionally stay overnight at his home. At the end of October, 1992, she moved out of the grandparents' home and moved in with George S. She anticipated having Danielle move in with her and Mr. S. after she got settled. She had Danielle every weekend and saw her occasionally during each week. She also had her on Christmas and at the New Year.

At Christmas the mother through Mr. S. asked the grandparents to allow Danielle to move in with them. The grandmother refused but testified she intended to

allow Danielle to move after the end of the current school year in which she is in kindergarten. In January 1993, because they believed the mother was involved in an inappropriate incident (not involving Danielle), the grandparents refused to allow her to see Danielle. In early January the mother went to Danielle's school to inquire about arrangements that would have to be made if Danielle moved in with her. On January 8, the grandparents instituted this suit seeking physical custody. They also relented in allowing the mother to visit Danielle in their home after the child continued to ask for her. The mother is no longer living with George S. She has moved into a rented home in Carlisle that she shares with her brother Rick.

Following a conciliation conference on March 24, we entered a temporary order allowing the mother to have Danielle three Saturdays out of four from 10:00 o'clock, a.m. until 5:00 o'clock, p.m. The father, Paul S., was allowed temporary custody of Danielle as he could arrange by mutual agreement. He supports the grandparents' position in this proceeding.

In summary, the mother has lived with Danielle since her birth on October 1, 1986, except: (1) for approximately two weeks at the beginning of December, 1991; (2) for about a month and a half from mid-January 1992, until late February 1992; and (3) since the end of October 1992, to date; however, at Christmas 1992, about a month and a half after she moved from the grandparents' home, she sought to have Danielle move in with her. Danielle has lived in her grandparents' home continuously since the beginning of December, 1991.

The mother relies on the decision of the Superior Court in *Gradwell v. Strausser,* 416 Pa. Super. 118, 610 A.2d 999 (1992). In that case, the court held that

"[a]bsent a prima facie right to custody, a third party lacks standing to seek custody as against the natural parents." *Id.* at 123, 610 A.2d at 1002. *Gradwell* involved both maternal grandparents and a paternal grandfather seeking custody of a child as against the child's parents. The court concluded that a grandparent is a third party and that the "appropriate manner for a third party to challenge child custody is through dependency proceedings, set forth in the Judicial Code." *Id.* The court held "It is only after a child is found dependent that a court will engage in custody proceedings where the standard is the best interests of the child." *Id.* It further concluded that the Domestic Relations Code at 23 Pa.C.S. §§5311, 5312 and 5313, provide grandparents and great-grandparents a limited right of action for *partial* custody or visitation only when a parent is deceased, divorced, or separated, stating:

"Unless dependency proceedings are initiated, 42 Pa.C.S. §§6351, 6352, or the parents rights are involuntarily terminated, 23 Pa.C.S. §2511, or the child is abused, 23 Pa.C.S. §6301 et seq. *or the grandparents are seeking partial custody or visitation rights and meet the statutory requirements of 23 Pa.C.S. §§5311-5313, we are powerless to interfere ... .*" (emphasis in original) *Id.* at 129, 610 A.2d at 1004-1005.

In *Gradwell,* a 15 year old child was living with her paternal grandfather at the time a custody action was instituted by her maternal grandparents. The child had lived with her parents and the paternal grandfather for almost two years and thereafter, resided with her paternal grandfather, without her parents, for three months immediately before the action was instituted. Following a hearing the trial court awarded physical custody to the parents against the wishes of the child who wanted to remain with her paternal grandfather.

Thereafter, the maternal grandparents and the paternal grandfather filed a motion requesting that testimony be taken and that an agent rendering family counseling to the parties report on the parents' status. The court then entered an order granting the parents' motion to dismiss the proceedings which the Superior Court upheld for lack of standing. The paternal grandfather had argued:

"[t]hat he should be permitted to maintain this action because he stands in loco parentis with respect to Lynn Anne. Specifically, [he] contends that he has resided with Lynn Anne for a length of time and, therefore, he has overcome the natural parents' prima facie right to custody." *Id.* at 125, 610 A.2d at 1003.

The Superior Court noted:

"A third party has been permitted to maintain an action where that party stands in loco parentis, that is, where he or she has 'assumed obligations incident to the parental relationship.'

\*\*\*

"The phrase 'in loco parentis' refers to a person who puts himself in the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of 'in loco parentis' embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties." *Id.* at 124-125, 610 A.2d at 1002-1003.

The court concluded, however, that the paternal grandfather did not stand in loco parentis to the child despite the fact that he had lived with his granddaughter in the parents' home for two years and she had lived with him alone for three months before the custody case was instituted.

In the case sub judice, the grandparents maintain that although the mother has lived with Danielle for all but a short time since December, 1991, they are the ones who have primarily attended to her needs and development. They enrolled her in a pre-school program and thereafter in kindergarten. They have attended school functions and had consultations with school officials while the mother never has. They had her baptized and have taken her to Sunday School while the mother never has. A support order was entered against the mother on January 29, 1992, which she paid during a period of time that she was employed by Pennsylvania Blue Shield until February, 1993.[1] While the mother has spent time with Danielle and does things with her, the grandparents believe she places her interests ahead of the child. Even though no dependency proceedings have ever been initiated nor have the mother's rights been involuntarily terminated nor has Danielle been abused, the grandparents still maintain they have standing to seek physical custody because they have stood and continue to stand in loco parentis. With some reservations we disagree.[2]

The mother worked at Pennsylvania Blue Shield from January 1991, until February 1993. Even before she and Danielle moved into the grandparents' home in December 1991, the grandmother babysat while she worked. With the mother then living with the grandparents this arrangement continued during her working hours of 7:30 a.m. to 3:30 p.m. The grandparents make much of the fact that they were the ones who took

---

1. There is also a support order against the father.

2. See *Ellerbe v. Hooks*, 490 Pa. 364, 416 A.2d 512 (1980). Despite the manner in which the Supreme Court resolved this case we are still bound to examine the standing issue under the standards set forth by the Superior Court in *Gradwell v. Strausser, supra.*

Danielle to the doctor as was needed and attended to most of her other needs. However, these were things that could conveniently be done during the day while the mother was working. The mother did provide support for Danielle through a court order, as well as provide medical insurance through her employer although those items have ceased since she lost her job.[3] The mother's life has been difficult, and the grandparents have willingly provided more than their share toward her needs as well as Danielle's; nevertheless, the record shows that the mother has been an active participant in Danielle's life. In *Gradwell v. Strausser,* the Superior Court stated:

"[T]he fact that the child and grandparent resided together for a period of time is insufficient to support a finding that (the paternal grandfather) stood in loco parentis and has overcome the parents' prima facie right to custody. A third party cannot place himself in loco parentis status in defiance of the parents' wishes and the parent/child relationship." *Id.* at 126, 610 A.2d at 1003.

The facts of the present case cannot be sufficiently distinguished from those in *Gradwell* for us to conclude that the grandparents have standing to seek primary physical custody of Danielle.[4] We find that the grandparents do not have standing to contest the mother's prima facie right to physical custody of her 6 year old daughter. We reject their contention that the father,

---

3. She is now on public assistance.

4. We have reviewed the facts of all of the cases cited in *Gradwell* for the position that "A third party has been permitted to maintain an action where that party stands in loco parentis, that is, where he or she has 'assumed obligations incident to the parental relationship.'" *Id.* at 125, 610 A.2d at 1003. The closest facts to the present case are those in *Gradwell.*

448

who has never separately had custody of Danielle, and who has been separated from the mother since June 1990, can somehow confer loco parentis status in them. Accordingly, the following order is entered.

## ORDER OF COURT

And now, April 16, 1993, the rule entered on March 18, 1993, against plaintiffs to show cause why their claim for primary custody of Danielle Nicole S. should not be dismissed for lack of standing, is made absolute. Plaintiffs' claim for primary physical custody, is dismissed.