## Bottles v. Mullen

*Dennis McCurdy*, for plaintiff.
*Veronica Anzalone-Smith*, for defendants.

MOTTO, *J.,* September 6, 1995—Before the court for disposition is the complaint of the natural father, Richard A. Bottles Jr., filed against the maternal grandparents, James and Patricia Mullen, for custody of the minor child, Megan Marie Mullen.

A full hearing on the custody complaint was held on August 21, 1995, from which the court makes the findings hereafter set forth.

Mr. Bottles is employed as a fingerprint examiner with the Federal Bureau of Investigation. He resides in Shinston, West Virginia, in a two bedroom home with a one-half acre back yard. Mr. Bottles is engaged to be married in November of this year. The minor child, Megan, was born August 6, 1992.

Mr. Bottles and Megan's mother, Patricia Mullen, who was the daughter of the defendants James and Patricia Mullen, met in late 1990. Mr. Bottles and Megan's mother cohabitated together for a relatively short period of time and discussed marriage. The cohabitation ended when Mr. Bottles left to take a position with the FBI in Washington, D.C. Before Mr. Bottles left for Washington, D.C., he and Patricia had discussed marrying and living in Washington, D.C. Megan was conceived before Mr. Bottles left. The parties never

resumed a relationship after Mr. Bottles left to take the Washington, D.C. employment.

Mr. Bottles made various efforts to establish a relationship with Patricia Mullen and Megan; however, his efforts were unsuccessful as Patricia resisted Mr. Bottles' efforts.

Patricia Mullen became seriously ill in late 1993 and died on May 13, 1994.

After Patricia became seriously ill, Patricia and the minor child, Megan, took residence with her parents, the defendants herein, James and Patricia Mullen, in Ellwood City, Pennsylvania.

The maternal grandmother, Patricia Mullen, testified that she and her husband James have taken care of Megan and raised Megan since November of 1993, acting as though they were the child's parents.

The maternal grandparents live in a two bedroom single story home in Ellwood City. Both Mr. & Mrs. Mullen are retired. There are other family members in the Ellwood City area with whom Megan enjoys regular contact.

The court generally finds that both Mr. Bottles and Mr. & Mrs. Mullen have adequate ability and facilities to properly care for Megan. Both parties involved in this case have adequate incomes, adequate facilities, and adequate concern and love for Megan to properly provide a home for her. Since September of 1994, Mr. Bottles has enjoyed partial custody of Megan on an alternating weekend basis. Megan is well-adjusted to spending her time both with Mr. Bottles as well as Mr. & Mrs. Mullen.

The applicable legal standard for adjudication of a custody dispute between a parent and a third party is that the parent has a prima facie right to custody which

will be forfeited only if convincing reasons appear that the child's best interest will be served by an award of custody to the third party. *Cardamone v. Elshoff,* 442 Pa. Super. 263, 659 A.2d 575 (1995).[1]

In the case of *In re Custody of Hernandez,* 249 Pa. Super. 274, 376 A.2d 648 (1977), the Superior Court held that the evidentiary scale is tipped, and tipped hard, to the parent's side. The court further stated that the judge must hear all the evidence relevant to the child's best interest, and then decide if the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side.

The non-parent bears the burden of production and the burden of persuasion and the non-parent's burden is heavy. *Ellerbe v. Hooks,* 490 Pa. 363, 416 A.2d 512 (1980).

In this case, the court concludes that it would be in the best interest of Megan to be united with her father as her primary physical custodian as early in her young life as possible. It is of greater benefit to a child to be raised by her natural parent in a traditional family environment than to be raised by her grandparents acting in the same capacity as parents would, even if both parties have equivalent abilities to provide for the physical, intellectual, moral, and spiritual well-being of the child. The court recognizes that Mr. & Mrs. Mullen are to be commended for the care they have provided to Megan for at least the last one and one-half

---

1. Persons other than natural or biological parents are deemed to be "third parties" for purposes of custody disputes. *Gradwell v. Strausser,* 416 Pa. Super. 118, 610 A.2d 999 (1992). However, the Mullens clearly have standing as they have acted "in loco parentis" by assuming the obligations incident to the parental relationship and discharging parental duties relative to Megan. *Id.*

years of her life. The court further recognizes that Megan views Mr. & Mrs. Mullen as her primary caretakers, however, there exists no evidence of record from which the court could conclude that Megan will not develop the same sense of stability and security with her father.

Whatever attachment Megan has to her maternal grandparents can be fostered by ensuring that Mr. & Mrs. Mullen are given adequate periods of partial custody with Megan. As time goes by, it will only become increasingly more difficult to effectuate the transfer of custody to the natural father.

For the reasons set forth in this opinion, the court enters the order of even date herewith granting primary physical custody and full legal custody to Mr. Bottles and providing for generous rights of partial custody in the maternal grandparents, James and Patricia Mullen.

## ORDER

And now, September 6, 1995, a full hearing having been held on August 21, 1995, on the complaint for custody filed by the natural father, Richard A. Bottles Jr., the court hereby enters the following order:

(1) Primary physical custody and full legal custody of the minor child, Megan Marie Mullen, is awarded to the natural father, Richard A. Bottles Jr., subject however to the rights of partial custody in the maternal grandparents, James and Patricia Mullen, as follows:

(2) The maternal grandparents, James and Patricia Mullen, shall have partial custody on alternating weekends from Friday at 6 p.m. until Sunday at 7 p.m., commencing Friday October 6, 1995.

(3) In the event that the holidays of Easter, Father's Day, Christmas Eve, and Christmas Day fall on a weekend on which the maternal grandparents are otherwise

scheduled to have partial custody, then in such event, the natural father shall retain custody for that weekend and the maternal grandparents shall have a make-up weekend of partial custody on the weekend that immediately falls or immediately precedes the day on which the aforesaid holiday occurs, whichever weekend is closer to the holiday.

(4) The maternal grandparents shall have partial custody of the minor child for four weeks in each calendar year, except that in the balance of the year 1995 the natural grandparents shall have partial custody for a one week period only. The maternal grandparents shall give at least 30 days notice each time they elect to exercise a period of one week partial custody. The maternal grandparents shall not be permitted to exercise the right of partial custody on consecutive weeks. The maternal grandparents shall not exercise such right of partial custody as provided in this paragraph on any days on which the minor child is enrolled in school during the school term or on any days on which the holidays of New Year's Day, New Year's Eve, Easter, Father's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Christmas Eve, Christmas Day, and the child's birthday fall. The maternal grandparents must use at least one week of partial custody at a time. In the event they exercise less than a full week at one time, they shall be credited for having taken a full week.

(5) The effective date of this order is October 1, 1995, until which date the parties shall abide by the provisions of the temporary order entered in this case on September 23, 1994.

(6) Transportation relative to the exercise of partial custody rights shall be shared with the maternal grandparents picking up the child at the commencement of

a period of partial custody and the natural father picking up the child at the conclusion of the period of partial custody.

(7) Appendix to custody order shall be filed with this order, with which the parties shall comply.

## APPENDIX TO CUSTODY ORDER

Certain rules of conduct generally applicable in custody matters are set forth below and are binding on all parties. The breach of any rule may subject the breaching party to contempt of court proceedings or form a basis to modify the custody order. If these general rules conflict with any specific provision of the custody order, the order shall prevail.

RULE 1. The custody or visitation provisions of the foregoing custody order are to be considered as the minimum requirements. However, the parties are free to expand the provisions by mutual agreement. No party can unilaterally, *i.e.* as he or she pleases, increase or decrease periods of custody or visitation.

RULE 2. The parties shall not undertake or permit the influencing of the mind of the child(ren) against any party. Any communication or statement which is in any manner derogatory to the other party, obscene, or profane shall not be made to or in the presence of the child(ren).

RULE 3. The parties shall not argue or engage in heated discussion in the presence of the child(ren) or when the parties are exercising their communication rights with the child(ren).

RULE 4. The parties shall not question the child(ren) as to the personal behavior of the other party, except as necessary to insure the personal safety and welfare

of the child(ren). No child shall be used as an informant or carrier of tales by either party.

RULE 5. The parties may not make extravagant promises to the child(ren) for the purpose of influencing the child(ren)'s loyalty at the expense of the other party. Any promise made to the child(ren) by either party should be made only with the full intention and expectation of fulfilling the promise.

RULE 6. The parties should always consider the child(ren)'s best interest and should act accordingly. A child involved in a custody dispute needs positive assurance from his or her parents that he or she is loved and that it is not his or her fault that any differences exist between the parents.

RULE 7. The parties are reminded that children learn from what they see or experience at the hands of their parents or other relatives. If children are to be taught proper moral, spiritual and ethical conduct, it cannot be effectively accomplished if the parties themselves indulge in questionable conduct.

RULE 8. When exercising custody or visitation rights with the child(ren), the parties must assure that the child(ren) continue(s) to attend school, church and other activities considered beneficial to the child(ren)'s overall growth and development.

RULE 9. Custody or visitation rights should be exercised on a regular, reasonable and acceptable basis. If it is impossible to exercise a period of custody or visitation, the other party should be immediately notified so that the disappointment or anxiety to the child(ren) that would result from a failed visit is reduced.

RULE 10. The party who has physical custody of the child(ren) should encourage, prepare and have the child(ren) available at the designated times and places

so that visitations occur smoothly. Likewise, the party exercising partial custody or visitation rights should encourage, prepare and return the child(ren) promptly at the designated times and places.

RULE 11. If occasions arise with either party which cause conflicts with the custody or visitation schedule, the parties should be flexible and agree upon make-up time.

RULE 12. A party or the person responsible for transporting the child(ren) from and to the custodial residence must refrain from the use of alcohol and possess a valid driver's license with current operating privileges. Any party or designee who arrives to pick up the child(ren) and has used alcohol excessively, is intoxicated or does not possess a valid driver's license automatically forfeits that custody or visitation period. Any party or designee who returns the child(ren) and has been drinking alcoholic beverages excessively, is intoxicated or does not possess a valid driver's license automatically forfeits the next scheduled custody or visitation period. Chronic violations of this rule may result in a suspension of custody or visitation.

RULE 13. Each party must notify the other party if an emergency or illness requiring a physician's attention should occur to the child(ren) while in their physical custody.

RULE 14. Each party should encourage telephone and other communication between the child(ren) and the other party. Telephone calls should occur at reasonable intervals and reasonable hours such as between 5:30 p.m. and 8:30 p.m. except for emergencies.

RULE 15. The party who has physical custody of the child(ren) must exercise the daily parental responsibilities. However, unless otherwise ordered, both parents should consult with one another on major decisions

affecting the child(ren) such as education, religious training and medical treatment.

RULE 16. Each party must notify the other party of any change in their residence or phone number within 72 hours after any such change.