J-A01030-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| A.M., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| T.V. | : | |
| | : | |
| APPEAL OF: A.M. | : | No. 1408 WDA 2014 |

Appeal from the Order July 28, 2014,
Court of Common Pleas, Beaver County,
Civil Division at No. 10796 of 2009

BEFORE: FORD ELLIOTT, P.J.E., DONOHUE and ALLEN, JJ.

MEMORANDUM BY DONOHUE, J.: **FILED FEBRUARY 12, 2015**

Appellant, A.M. ("Proposed Intervener"), appeals from the trial court's order dated July 28, 2014, denying her petition to intervene in this custody matter between A.M. ("Father") and T.V. ("Mother"). The Proposed Intervener contends that the trial court erred in refusing to grant her standing to intervene based upon her *in loco parentis* relationship with S.M. ("Child"). For the reasons that follow, we reverse the trial court's order.

The trial court summarized the relevant factual background of this case as follows:

> Proposed Intervener resides in Beaver County. She is 30 years old and the estranged wife of [Father]. She began to see and date [Father] in and around the summer of 2009 and came to know the [Child] at that time. Proposed Intervener moved into the residence with [Father] in January 2010 and married him in May of 2010. Proposed Intervener did not work and performed the caretaking responsibilities for [Child] of whom [Father] had primary custody.

[Mother] had limited partial custody in the beginning that has increased over time.

While married, [Father] and Proposed Intervener had a second child, who is not the subject of this custody action. From January of 2010 through at least the summer of 2013, Proposed Intervener was the primary caregiver for [Child], and for the child of the marriage after that [Child's] birth. Proposed Intervener testified that she is extremely close with [Child] and established a bond with her.

[Father] testified and confirmed that Proposed Intervener did care for both children while he worked during the week. He also testified that he was very involved in [Child's] life and took most Fridays off to spend time with [Child] and care for her in addition to the weekend time that he spent with [Child].

[Father] testified that the parties separated in the summer of 2013 and that Proposed Intervener no longer cared for [Child] during the day after that time. He stated that either his mother or sister watched over and cared for [Child] from the summer of 2013 forward. Interestingly, the parties continued to live in the same residence after their separation in 2013 until the end of June, 2014, when the relationship became so hostile that [Father] had to move to his mother's residence with [Child]. [Father] testified that he does not desire Proposed Intervener to have a custodial relationship with [Child] of his former relationship with [Mother].

Trial Court Opinion, 7/28/2014, at 1-2.

On July 21, 2014, the trial court conducted an evidentiary hearing on Proposed Intervener's petition, receiving testimony from Proposed Intervener, Father, and Mother. In an opinion and order dated July 28, 2014, the trial court denied Proposed Intervener's petition. The trial court

found that "at first glance, it appears that Proposed Intervener would have standing on the basis that she did perform parental duties and assumed a parental status with this [Child] for some period of time." *Id.* at 4-5. The trial court declined to grant standing to intervene, however, for two reasons. First, citing **Morgan v. Weiser**, 923 A.2d 1183 (Pa. Super.), *appeal denied*, 932 A.2d 1289 (Pa. 2007), the trial court determined that "both natural parents oppose intervention and a custodial relationship by the Proposed Intervener with the [Child]." *Id.* at 5 (citing **Morgan**, 923 A.2d at 1187). Second, the trial court indicated that intervention was not in the best interests of Child, since it would "promote the concept that [Child] has two mothers [and] will, in this [c]ourt's estimation, only inhibit that renewed relationship [with Mother] and serve to confuse the [Child]." *Id.* at 5-6.

Proposed Intervener filed a timely notice of appeal, raising a single question for our consideration and determination:

> Once *loco parentis* status is recognized, can it be terminated simply by having both natural parents oppose its continuance, especially without taking into account the best interest of the child, in particular the psychological bond with the person *in loco parentis*?

Proposed Intervener's Brief at 6.

Because the order in question relates to a child custody matter, we apply the following well-established standard of review:

> The scope of review applied by an appellate court to a child custody order is of the broadest type; the

appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that is not supported by competent evidence. However, this broad scope of review does not vest an appellate court with the duty or privilege of making its own independent determination. An appellate court may not interfere with the trial court's factual conclusions unless they are unreasonable in view of the trial court's factual findings and thus represent an abuse of discretion.

*Jacob v. Shultz-Jacob*, 923 A.2d 473, 477 (Pa. Super. 2007); *Jackson v. Beck*, 858 A.2d 1250, 1252 (Pa. Super. 2004).

In *J.A.L. v. E.P.H.*, 682 A.2d 1314, 1318 (Pa. Super. 1996), where this Court reversed a trial court's decision to deny *in loco parentis* status to a domestic partner, we offered the following insight on intervention in child custody cases:

> The concept of standing, an element of justiciability, is a fundamental one in our jurisprudence: no matter will be adjudicated by our courts unless it is brought by a party aggrieved in that his or her rights have been invaded or infringed by the matter complained of. The purpose of this rule is to ensure that cases are presented to the court by one having a genuine, and not merely a theoretical, interest in the matter. Thus the traditional test for standing is that the proponent of the action must have a direct, substantial and immediate interest in the matter at hand.
>
> In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain

> of the family by those who are merely strangers, however well-meaning.

***Id.*** at 1318–19.

Persons other than the natural parents are considered "third parties" in custody disputes. ***Gradwell v. Strausser***, 610 A.2d 999, 1001 (Pa. Super. 1992). Except in dependency proceedings, third parties lack standing to seek custody as against the natural parents unless they can demonstrate a prima facie right to custody. ***Id.*** at 1002. A third party *in loco parentis* possesses a prima facie right to custody sufficient to confer standing to litigate questions of custody of the child for whom he or she has cared. ***McDonel v. Sohn***, 762 A.2d 1101, 1105 (Pa. Super. 2000); 23 Pa.C.S.A. § 5324(2).[1]

Our Supreme Court has defined *in loco parentis* status as follows:

> The phrase "*in loco parentis*" refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of '*in loco parentis*' embodies two ideas; first, the assumption of a

---

[1] **§ 5324. Standing for any form of physical custody or legal custody.**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

\* \* \*

(2) A person who stands in loco parentis to the child.

23 Pa.C.S.A. § 5324(2).

parental status, and, second, the discharge of parental duties.

*T.B. v. L.R.M.*, 786 A.2d 913, 917 (Pa. 2001) (citing *Commonwealth ex rel. Morgan v. Smith*, 241 A.2d 531, 533 (Pa. 1968)); *see also Peters v. Costello*, 586 102, 110, 891 A.2d 705, 710 (Pa. 2005) ("The term *in loco parentis* literally means 'in the place of a parent.'") (citing Black's Law Dictionary (7th Ed. 1991) at 791). Moreover,

> The *in loco parentis* basis for standing recognizes that the need to guard the family from intrusions by third parties and to protect the rights of the natural parent must be tempered by the paramount need to protect the child's best interest. Thus, while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.

*T.B.*, 786 A.2d at 917 (quoting *J.A.L.*, 682 A.2d at 1319-20). The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child. *Id.*

As this Court has recognized, stepparents may be uniquely qualified to attain *in loco parentis* status to their stepchildren. In *J.A.L.*, Judge Beck

discussed at some length the issue of stepparents' standing in custody disputes:

> Although the requirement of *in loco parentis* status for third parties seeking child custody rights is often stated as though it were a rigid rule, it is important to view the standard in light of the purpose of standing principles generally: to ensure that actions are brought only by those with a genuine, substantial interest. When so viewed, it is apparent that the showing necessary to establish *in loco parentis* status must in fact be flexible and dependent upon the particular facts of the case. Thus, while unrelated third parties are only rarely found to stand *in loco parentis*, step-parents, who by living in a family setting with the child of a spouse have developed a parent-like relationship with the child, have often been assumed without discussion to have standing to seek a continued relationship with the child upon the termination of the relationship between the step-parents. Where the issue of a step-parent's standing has been directly addressed by this court, standing has been found to exist because the step-parents stood *in loco parentis* to the child or children in question.
>
> In addition, we have suggested that where a petitioner who is not biologically related to the child but has established a parent-like relationship with the child seeks not to supplant the natural parent, but only to maintain his relationship with the child through reasonable visitation or partial custody, his burden to establish standing is easier to meet.
>
> In today's society, where increased mobility, changes in social mores and increased individual freedom have created a wide spectrum of arrangements filling the role of the traditional nuclear family, flexibility in the application of standing principles is required in order to adapt those principles to the interests of each particular child. We do not suggest abandonment of the rule

> that a petitioner for custody who is not biologically related to the child in question must prove that a parent-like relationship has been forged through the parties' conduct. However, we hold that the fact that the petitioner lived with the child and the natural parent in a family setting, whether a traditional family or a nontraditional one, and developed a relationship with the child as a result of the participation and acquiescence of the natural parent must be an important factor in determining whether the petitioner has standing.

*J.A.L.*, 682 A.2d at 1320-21 (citations omitted).

Since this Court decided *J.A.L.*, Pennsylvania appellate courts have frequently recognized that stepparents stand *in loco parentis* to their stepchildren. *S.A. v. C.G.R.*, 856 A.2d 1248, 1250 (Pa. Super. 2004) (stepmother "lived with and parented this child since birth, developing her role as his mother with the participation and acceptance of C.R."); *Liebner v. Simcox*, 834 A.2d 606, 610 (Pa. Super. 2003) (stepfather was *in loco parentis*); *Bupp v. Bupp*, 718 A.2d 1278, (Pa. Super. 1998) (where stepfather assumed the role of father from the time of child's birth, including diapering, feeding, and playing with the child, *in loco parentis* standing was established); *Karner v. McMahon*, 640 A.2d 926, 930 (Pa. Super. 1994) ("Upon an independent review of the record, we agree with the conclusion of the trial court that stepfather has assumed primary parental responsibility for the children since 1989 to the present."); *see also Parton v. Parton*, 36 Pa.D. & C.4th 241, 244 (Monroe County, 1996) (stepfather "raised them, fed them, bathed them, played with them, attended their little league

- 8 -

games, disciplined them and helped them with their homework, all things a parent would do. He was there for them."). Most recently, in **D.G. v. D.B.**, 91 A.3d 706 (Pa. Super. 2014), this Court reaffirmed the basic principle in **J.A.L.** that *in loco parentis* status may be appropriate where the petitioner "lives with the child and a natural parent as a family unit." **Id.** at 709.

In the present case, based upon the evidence presented, the trial court determined that Potential Intervener had satisfied the fundamental requirements for *in loco parentis* status as established by our Supreme Court in **T.B.**, namely that "she did perform parental duties and assumed a parental status with this [Child] for some period of time." Trial Court Opinion, 7/28/2014, at 4-5. Our review of the certified record on appeal reflects that this determination is supported by competent evidence. Proposed Intervener lived with Father, Child, and (later) the couple's child as a family unit from January 2010 until at least the summer of 2013.[2] N.T., 7/21/2014, at 8-22. Proposed Intervener testified that she was Child's primary caretaker during that time period, including up to 98% of the time spent "in the role of raising" Child, especially since Father worked on weekdays, spent time working on projects in the garage when at home, and took frequent business trips. **Id.** at 10, 20. She also indicated that she was "extremely bonded" with Child (who called her "mom") in precisely the same

---

[2] During this period of time, Child (born in December 2006) was between three and six years old.

manner as with her own child. *Id.* at 11 ("We have … a parent/child bond.").[3] Emails from Father predating his separation from Proposed Intervener thanked her for "raising our children" and "being a good mother" to Child, and expressed his concern that if they divorced Child "will lose the woman that has been her mother for all of the life that she can remember." *Id.* at 18-19.

Father offered conflicting testimony, emphasizing the extent of his contact with Child (including weeknights and on weekends) and describing Proposed Intervener as a "mere caretaker." N.T., 7/21/2014, at 30-31; Father's Brief at 8. Father admitted, however, that his explanation to Child for the presence of both Mother and Proposed Intervener was that "she had two moms." N.T., 7/21/2014, at 31. In sum, the certified record contains sufficient evidence to support the trial court's decision that Proposed Intervener had performed parental duties and assumed a parental status with Child, and thus established prima facie *in loco parentis* status. Trial Court Opinion, 7/28/2014, at 4-5.

The trial court nevertheless declined to confer standing on Potential Intervener for two reasons. First, the trial court recognized that a third

---

[3] Proposed Intervener complains that the trial court did not permit her to introduce evidence of her bond with Child. Proposed Intervener's Brief at 10. Our review of the record, however, reflects that after some initial hesitation, the trial court decided to grant "some leeway" and permitted the introduction of substantially all of the proffered evidence. N.T., 7/14/2014, at 11-15. Proposed Intervener has not identified any specific evidence the trial court excluded.

party cannot place herself *in loco parentis* "in defiance of the parents' wishes," ***Morgan***, 923 A.2d at 1187, and noted that here both natural parents testified they oppose intervention into Child's custody proceeding. Trial Court Opinion, 7/28/2014, at 5. Second, the trial court decided that intervention by Potential Intervener would not be in Child's best interests, in part because "the concept that [Child] has two mothers" would be confusing to her. ***Id.*** at 5-6.

We cannot agree that either of these reasons constitutes a sufficient basis for denying standing to Potential Intervener on the facts presented. While we agree that a third party cannot place herself *in loco parentis* "in defiance of the parents' wishes," this principle has no application in this case. In ***Liebner***, this Court emphasized that the "defiance" of the natural parents must have been to the **creation** of a parent/child bond with the third party, rather than with **continuation** of the relationship once established (i.e., after the onset of custody litigation). ***Liebner***, 834 A.2d at 610. Specifically, we held that whether the stepparent has standing depends upon whether she "lived with the child and the natural parent in a family setting, irrespective of its traditional or nontraditional composition, and developed a relationship with the child as a result of the participation and acquiescence of the natural parent." ***Id.*** We rebuffed any suggested that *in loco parentis* relationship, once established, could be lost by a subsequent change in circumstances, including the eventual separation

and/or divorce of the natural parent from the petitioning step-parent. *Id.* at 611 ("We also reject Mother's argument that even if Michael had obtained *in loco parentis* status, such status has been lost by a change in circumstances, namely the parties' separation and Mother's remarriage."); *see also McDonel*, 762 A.2d at 1106 (refusing to apply the "defiance" principle because "[natural father] initially denied paternity, had little contact with C.S., and no contact with the [third party petitioners] and so could not have been an obstruction to the … developing relationship with C.S.").

The cases in which standing has been denied by application of the "defiance" principle all reflect a well-established and clearly expressed objection/refusal by one or both of the natural parents to the development of a parent/child relationship from the outset of the petitioner's relationship with the child. In *Morgan*, we concluded that the child's legal guardians **never** permitted petitioner "to assume parental status or discharge parental duties." *Morgan*, 923 A.2d at 1188. To the contrary, we highlighted that even petitioner acknowledged that the guardians' "long-standing opposition to [his] exercise of rights toward [child] have been hostile and aggressively absolute." *Id.* at 1189. Similarly, in *J.F. v. D.B.*, 897 A.2d 1261 (Pa. Super. 2006), we reversed a grant of *in loco parentis* status because "the facts of this case show unequivocally that Father **at no time** participated or acquiesced in gestational carrier's assuming custody of the triplets." *Id.* at 1275 (emphasis in original). And in *B.A. ex rel. v. C.E.*, 599 A.2d 545

(Pa. 1999), our Supreme Court reversed a grant of *in loco parentis* status since the natural father had consistently opposed the adoption of his child and had actively sought custody of the child "from shortly after the child was born until the present." ***Id.*** at 550.

In this case, the trial court found that both Father and Mother currently "oppose intervention and a custodial relationship by the Proposed Intervener." Trial Court Opinion, 7/28/2014, at 5. It made no finding of fact, however, that either parent[4] objected (or expressed any contrary wishes) to the establishment of a parent/child relationship between Proposed Intervener and Child. The above-cited evidence (including the emails and Father's own testimony) reflects that Father actively participated in the formation of a close bond between Proposed Intervener and Child. ***See, e.g.***, N.T., 7/14/2014, at 18-19, 30. While Mother testified that she never "intended to relinquish any custodial rights" to Proposed Intervener, ***id.*** at 40, she did not offer any basis upon which to conclude that she ever expressed, either by hostile word, act, or deed, any objection to the parent/child relationship during the relevant time period. Even though Mother, unlike Father, did not actively participate in the development of the

---

[4] Actions in defiance of the wishes of either natural parent will defeat *in loco parentis* status. ***B.A.***, 569 A.2d at 550. The consent of one parent to a parental role for the petitioner is insufficient. ***Id.*** at 551 (Nigro, J., concurring) ("The stakes are simply too high and the rights of the non-consenting parent too substantial to allow one parent to confer *in loco parentis* status on a third party.").

parental relationship now at issue, by her silence she clearly acquiesced to it.

This Court has stressed that "[t[he law simply cannot permit a third party to act contrary to the natural parent's wishes in obtaining custody and then benefit from that defiant conduct in a subsequent custody action." *J.F.*, 897 A.2d at 1275-76. Here, however, the evidence in the certified record does not reflect that Proposed Intervener's relationship with Child developed "contrary to the wishes of either natural parent" or as a result of any "defiant conduct" on her behalf. Instead Proposed Intervener's relationship with Child developed with the participation of Father and the acquiescence of Mother. As a result, the trial court erred in refusing to recognize Proposed Intervener's *in loco parentis* status on this basis.

Finally, the trial court decided that granting *in loco parentis* standing to Proposed Intervener would not be in Child's best interests, both because it would interfere with Child's developing relationship with Mother and because having "two mothers" would be confusing to Child. Trial Court Opinion, 7/28/2014, at 5-6. While the trial court's attention to the best interests of the child is certainly appropriate in child custody cases, it was misplaced at this stage of the proceedings. As our Supreme Court reminded in *T.B.*, where (as here) the existence of an *in loco parentis* relationship is shown, "our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully

the issue of whether that relationship should be maintained even over a natural parent's objections." Child's best interests will be the guiding principle when the trial court makes its eventual custody decision -- **after** all of the parties to these proceedings (including Proposed Intervener) have a full and fair opportunity to present his or her case for continuing involvement in Child's life.

Order reversed. Case remanded. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/12/2015