J-A31016-17 & A31017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.L., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.B.-P., GUARDIAN | | |
| | : | No. 3886 EDA 2016 |

Appeal from the Order November 14, 2016
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000839-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: K.L., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.B.-P., GUARDIAN | | |
| | : | No. 1185 EDA 2017 |

Appeal from the Order Entered March 6, 2017
In the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000839-2015

BEFORE:   PANELLA, J., OLSON, J., and STEVENS, P.J.E.*

MEMORANDUM BY OLSON, J.:                    **FILED MARCH 15, 2018**

At docket number 3886 EDA 2016, Appellant R.B.-P ("Appellant" or "Guardian"), the former legal guardian of a female minor, dependent child, K.L.[1] ("Child"), appeals the permanency review order entered by the trial court

_____

[1]  Child was born in March of 2010.

_____

*   Former Justice specially assigned to the Superior Court.

on November 14, 2016, directing that visitation between Guardian and Child would remain suspended until further order of court. At docket number 1185 EDA 2017, Guardian appeals from the termination and permanency review orders entered on March 6, 2017, that changed Child's permanency goal to adoption, pursuant to 42 Pa.C.S.A. § 6351, to the extent that the orders precluded Guardian from continuing to serve as Child's guardian and/or have visitation with Child.[2] At docket number 1185 EDA 2017, we affirm the orders precluding Guardian from continuing to serve as Child's guardian and/or have visitation with Child. We dismiss the appeal from the order maintaining suspended visitation as moot at docket number 3886 EDA 2016.[3]

In a prior memorandum, we explained the following factual and procedural background, which is relevant to the instant appeals:

> Child [had] resided with Appellant, and Appellant's adult daughter, L.B., her entire life. N.T., 6/3/15, at 26-27. Appellant was granted "primary [physical] and sole "legal custody" of Child on April 3, 2013.[1] Trial Court Opinion, 10/26/15, at 1. On March 19, 2015, the City of Philadelphia Department of Human Services

---

[2] In its opinion entered on June 9, 2017, the trial court states that, after the evidentiary hearing on March 6, 2017, it also granted the petition filed by the Philadelphia Department of Human Services ("DHS") to involuntarily terminate the parental rights of Child's mother, K.L., ("Mother"), and Child's father, J.W., ("Father"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511. Trial Court Opinion, 6/9/17, at 1, 5, and 7-8; N.T., 3/6/17, at 26-27, 118-119, and 123. Neither Mother nor Father filed an appeal from the March 6, 2017 termination and goal change orders, nor is either one a party to the instant appeal.

[3] For ease of disposition, and because these two actions were listed consecutively on this panel, we address both appeals in a single memorandum.

("DHS") received a report alleging that Appellant inappropriately touched Child. *Id.*; N.T., 6/3/15, at 4. Jamilla Brown, the DHS sex abuse investigator, interviewed Child, then age five, who indicated that both Appellant and L.B. inappropriately touched her on her "tutu," which she subsequently identified, by pointing to a picture, as her vagina. N.T., 6/3/15, at 5-7. Appellant indicated to DHS that Child "had been making similar comments for some time." Trial Court Opinion, 10/26/15, at 1.

Following the report to DHS, Appellant took Child to her primary care physician and, upon the recommendation of that doctor, to the Children's Hospital of Philadelphia ("CHOP"). N.T., 6/3/15, at 8. While at CHOP, Child indicated, "Mama and Dada had touched her."[2] Trial Court Opinion, 10/26/15, at 1. The report from CHOP alleged that Appellant stated Child, "had witnessed L.B. engaging in sexual acts with her paramour[,] and that L.B. had watched a sexually explicit movie in the presence of [Child]." *Id.* at 2 (unpaginated); N.T., 6/3/15, at Exhibit CA-1, at 13.

By order of protective custody, Child was placed in foster care on March 31, 2015. Child was temporarily committed to DHS by order dated April 2, 2015. On April 7, 2015, DHS filed a dependency petition. A hearing commenced on June 3, 2015, during which Douglas Earl, Esquire, represented Appellant. DHS presented the testimony of Jamilla Brown, the DHS sex abuse investigator, who testified that, upon investigation, the allegations against Appellant were unfounded. N.T., 6/3/15, at 11. Further, DHS presented the testimony of D.L., Child's foster parent. Appellant did not present any testimonial or documentary evidence.

Thereafter, the hearing was continued to July 7, 2015, on which date Attorney Earl informed the court that Appellant had retained new counsel, Danny Elmore, Esquire. Trial Court Opinion, 10/26/15, at 2 (unpaginated). The trial court continued the case to August 3, 2015, "without further action, because [Attorney] Elmore was not informed by [Appellant] or [Attorney] Earl that the case was mid-trial." *Id.* Significantly, by order dated July 7, 2015, the trial court attached Attorney Earl for the hearing on August 3, 2015.

On August 3, 2015, Appellant appeared at the hearing with Attorneys Earl and Elmore. At the beginning of the proceeding, Attorney Earl requested on the record in open court to be excused

from the hearing because Appellant had terminated his representation. N.T., 8/3/15, at 4. Before the court ruled on Attorney Earl's request or received additional evidence in the dependency case, it requested a sidebar conversation with all counsel. Following the sidebar conversation, which occurred off-the-record, the court stated as follows:

> THE COURT: [ ] Must so the record is clear, . . . Mr. Earl, based upon that sidebar conversation, [is] there currently . . an agreement?
>
> THE COURT: [Do] [y]ou want to step out with [Appellant] for a minute?
>
> MR. EARL: Yes, may I? *Id.* at 5-6.
>
> After Attorney Earl consulted with Appellant, the trial court stated on the record in open court to Attorney Earl, in part:
>
>> THE COURT: [I]f you wanted the witnesses to testify, so be it, but I've given you some time to consult with [Appellant]. Either it's an agreement[,] or it's a trial. . . .
>>
>> And . . . Just so the record is clear, we're in mid - trial.

*Id.* at 6. Attorney Earl responded, "she agrees . . . with the consensual agreement amongst the attorneys." *Id.* at 6-7. Thereafter, the trial court excused Mr. Earl and received no additional evidence. *Id.* at 7.

By order dated August 3, 2015, the trial court adjudicated Child dependent and continued her placement in foster care. On September 2, 2015, Appellant filed a *pro se* notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(1) and (b).[3] On October 26, 2015, the trial court filed a Rule 1925(a) opinion.

_____

[1] The certified record reveals that Child's biological mother is incarcerated. N.T., 6/3/15, at 6. The record does not reveal any information about Child's biological father. Neither of Child's parents is a party to this appeal.

- 4 -

² Child refers to Appellant as "Mama" and to L.B. as "Dada." Trial Court Opinion, 10/26/15, at 1.

³ Although Appellant filed *pro se* a notice of appeal and a concise statement, Appellant submitted a counseled brief. Specifically, Appellant [was] represented on [direct] appeal by Jennifer A. Santiago, Esquire.

*In the Interest of: K.L., a Minor*, (Pa. Super. 2016) (unpublished memorandum filed 5/4/16, at 1-5) (footnotes in original).

Additionally, pertinent to this appeal:

On April 3, 2013, Guardian was granted primary and sole custody of Child.²  On August 3[,] 2015, [] Child was adjudicated dependent by the Honorable Jonathan Irvine.  The events leading to the adjudication of [] Child dependent commenced on or about March 19, 2015.  On that date[,] [DHS] received a report alleging that Guardian inappropriately touched Child.  These allegations could not be substantiated[,] but [] Child was ultimately adjudicated dependent because [] Child was not attending school and Guardian had refused to sign consents.  Guardian appealed that decision [assigned Docket No. 2767 EDA 2015] on September 2, 2015, which was affirmed by the Superior Court on May 4, 2016.  Thereafter, Guardian filed a motion to seek visitation of [] Child, which had been suspended by the Honorable Judge Irvine. [The motion does not appear in the trial court's docket or in the certified record.] On November 14, 2016, a two[-]hour hearing occurred to determine if Guardian should be allowed to visit [] Child.  Issues as to Guardian's standing to seek visitation were not fully [a]rgued[,] and it was determined that argument would be held by the court on March 6, 2017.  During the interim it was determined that prior to the next hearing date that the current placement goal would remain reunification for [] Child with parent or Guardian.  It was also determined that a therapist would make recommendations if there should be therapeutic supervised visits between Child and Guardian.

_____

² Mother had relinquished control of [] Child to Appellant shortly after Child's birth.

Trial Court Opinion (3886 EDA 2016), 2/27/17, at 2-3 (unpaginated) (record citations omitted).[4] The trial court entered an order maintaining the suspension of Guardian's visitation with Child on November 14, 2016. On December 13, 2016, Guardian, acting *pro se*, filed a notice of appeal (at 3886 EDA 2016) and a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In that appeal, Guardian raised a number of issues pertaining to the trial court's rulings regarding her suspended visitation with Child.

Appellant's second appeal, at 1185 EDA 2016, focuses on the subsequent adjudication of Child as a dependent and the preclusion of Guardian from continuing to serve in that capacity and/or have visitation with Child. On these issues, the trial court detailed the additional factual and procedural history as follows:

> On March 6, 2017, the [c]ourt held a hearing to determine if Mother and Father's parental rights were to be terminated and if [] Child's goal should be changed from reunification to adoption. Guardian appeared at the hearing and informed the [c]ourt that she had terminated her previous lawyer and had retained new counsel. The [c]ourt determined that [] Guardian's new counsel had entered her appearance the same day as the hearing but was not present. [] Guardian requested a continuance because her new attorney was not present. The [c]ourt denied the continuance request because [] Guardian had known of the hearing since

---

[4] On January 17, 2017, Guardian's counsel from the November 14, 2016 hearing, Attorney Patricia S. Coates, who had entered her appearance on September 16, 2016, filed a petition to withdraw her appearance. The trial court granted the petition on March 3, 2017. Guardian's present counsel, her fifth counsel in this matter, Attorney Lauren H. Kane, entered her appearance on behalf of Guardian on March 6, 2017.

November 2016, had prior counsel, and demonstrated a history of terminating her attorneys. The [c]ourt allowed Guardian to participate in the hearing, however. Guardian's counsel failed to attend the hearing and Guardian was disruptive throughout the hearing by constantly exiting and re-entering the [c]ourtroom. The [c]ourt at one point asked Guardian to leave the [c]ourtroom since she was continuously disruptive. Shortly thereafter, she was invited back to the [c]ourtroom and the [c]ourt allowed her to participate throughout the hearing.

A review of the transcript from the hearing on March 6, 2017, provides evidence of Guardian disrupting the [c]ourt's proceedings. Review of the transcript shows the inability of Guardian to maintain self-control. She was discourteous, threatening and emotionally unstable indicating to the [c]ourt her inability to be a [g]uardian to [] Child.

Trial Court Opinion (1185 EDA 2016), 6/9/17, at 2-4 (unpaginated).

On March 6, 2017, the trial court entered the orders terminating the parental rights of Mother and Father to Child, and changing Child's permanency goal to adoption. The orders precluded Guardian from continuing to serve as Child's guardian and/or have visitation with Child. On April 3, 2017, Guardian, through Attorney Kane, timely filed a notice of appeal (at 1185 EDA 2016) and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

First, we will address the appeal pertaining to 1185 EDA 2016. Guardian raises the following issue therein for our review:

When the trial court denied Guardian's motion to continue a hearing because her counsel was unavailable and then rushed to a judgment that revoked forever her custody of the [c]hild, did the trial court:

a. abuse its discretion?

b. deny her rights to [d]ue [p]rocess of [l]aw?

Guardian's Brief (1185 EDA 2016), at 6.

Guardian claims that the trial court abused its discretion by denying her request to continue the termination of parental rights hearing, wherein the trial court also terminated her guardianship. *Id.* at 21-26. She further claims that "[t]he rush to judgment resulted in a denial of Guardian's due process rights to be heard, to be represented by counsel and to call witnesses and introduce evidence on her behalf." *Id.* at 28. As such, Guardian contends that the trial court's findings that she delayed court proceedings, harassed Child's foster parents and school officials, and neglected Child's medical care "are woefully inadequate and are based upon hearsay evidence elicited by interested witnesses without any input from Guardian." *Id.* at 34. Accordingly, she requests that this Court vacate the trial court's ruling "and remand for a full hearing on the merits." *Id.*

In juvenile matters, "a party is entitled to representation by legal counsel at all stages of any proceedings [] and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him." 42 Pa.C.S.A. § 6337. We have previously determined that "a party" as set forth at Section 6337 "is any person who in some way cares for or controls the child in question, or who is alleged to have abused the child." *In re L.J.*, 691 A.2d 520, 526 (Pa. Super. 1997). Here, we conclude that Guardian is a party entitled to counsel pursuant to Section 6337.

- 8 -

However, as set forth above and upon review of the certified record, Guardian has never argued that she did not have counsel. Instead, she argues that retained counsel was unavailable for the termination hearing and the trial court violated her due process rights in denying a requested continuance.

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A., II,* 683 A.2d 297, 300 (Pa. Super. 1996).

Moreover, we review a trial court's denial of a continuance request for an abuse of discretion. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "The interests of justice require the court to look at all the circumstances, effectuating the purposes of the Juvenile Act, 42 Pa.C.S.A. § 6301, in determining whether a continuance is appropriate." Pa.R.J.C.P. 1122, Comment.

We have previously determined:

Placement of and custody issues pertaining to dependent children are controlled by the Juvenile Act, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"). The policy underlying these statutes is to prevent children from languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental

commitment. Consistent with this underlying policy, the 1998 amendments to the Juvenile Act, as required by the ASFA, place the focus of dependency proceedings, including change of goal proceedings, on the child. Safety, permanency, and well-being of the child must take precedence over *all* other considerations, including the rights of the parents.

\* \* \*

When the child welfare agency has made reasonable efforts to return a foster child to his or her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home. This Court has held that the placement process should be completed within 18 months.

*In re N.C.*, 909 A.2d 818, 823 (Pa. Super. 2006) (internal citations omitted).

In this case, the trial court permitted Guardian to participate in the termination hearing. As the trial court observed, by the time of the March 6, 2017 hearing, Guardian had a series of five attorneys representing her in this matter. In fact, her present counsel, Attorney Kane, had entered her appearance on the same date as the termination/goal change hearing, shortly before the commencement of the hearing, but was unavailable to participate. The trial court noted that Guardian was unruly and disruptive at the hearing. Accordingly, the trial court found that Child's best interests would not be served by continuing Guardian's relationship with Child. We conclude that Guardian was given ample opportunities to participate, but then disrupted the proceedings and squandered her due process rights. The record reflects that the trial court did not deprive Guardian of due process of law by refusing to grant her a continuance to have her counsel present.

Additionally, the trial court noted that, "Guardian had delayed court proceedings, harassed foster parents, school officials, and neglected to be actively and positively involved with the medical care of [] Child[.]" Trial Court Opinion, 6/9/17, at 7. At the time of the termination hearing, Child had been in foster care for almost two years, in at least three different foster homes. N.T., 3/6/17, at 59. Based on the foregoing, we conclude that the trial court carefully balanced Guardian's request for a continuance with Child's need for permanency when it determined that the termination proceeding should proceed.

Guardian claims that trial court subsequently terminated her guardianship erroneously and denied her requested visitation with Child. Our "standard of review of a visitation order is the same as that for a custody order." *Liebner v. Simcox*, 834 A.2d 606, 609 (Pa. Super. 2003) (internal citation omitted). An appellate court's standard of review of a custody order is of the broadest type, and:

> the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Id.* (citation omitted). "An abuse of discretion in the context of [visitation] does not consist merely of an error in judgment; it exists only when the trial court overrides or misapplies the law in reaching its conclusion or when its judgment is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record." *T.B. v. L.R.M.*, 753 A.2d 873, 881 (Pa. Super. 2000) (citation omitted).

"[V]isitation is the right to visit with a child without physically removing the child from the custodian." *Morgan v. Weiser*, 923 A.2d 1183, 1188 n.2 (Pa. Super. 2007) (citation omitted). "In a visitation case, [a] third party need only convince the court that it is in the child's best interest to have some time with the third party." *T.B.*, 753 A.2d at 889 (citation omitted). "The 'best interest of the child' standard considers all factors that legitimately have an influence upon the child's physical, intellectual, moral and spiritual well-being on a case-by-case basis." *Id.* at 888.

In its opinion entered on June 9, 2017, the trial court addressed the Guardian's issues as follows:

> Child was adjudicated dependent on August 3, 2015. On November 14, 2016, [the trial court] after a hearing on the merits determined that a therapist would make recommendations whether therapeutic supervised visits should occur between Guardian and Child. Issues as to Guardian's standing were not fully argued due to time constraints so the hearing was continued to March 6, 2017. At the hearing on November 14, 2016, psychiatrist, Dr. Thomas Shawnodese Wind ("Dr. Wind"), provided testimony that continued visitation between [] Guardian and Child would not be in [] Child's best interest and constituted a grave threat. Dr. Wind testified that visitation between [] Child and Guardian would be detrimental to [] Child's mental health. Dr.

Wind's conclusions were based upon interviews with [] Child, a DHS Supervisor, a former foster parent, and an evaluation of Child's Progress Reports. Dr. Wind's conclusions were that [] Child suffered from severe mental and behavioral problems which included eating non-food items, sexualized behavior, hyperactivity, and self-mutilation. Dr. Wind testified that Child had trouble behaving in school, trouble with reading and math and was unable to follow instructions. Dr. Wind also testified that Child was a victim of Child abuse. Dr. Wind testified that [] Child's reports of sexualized behavior by [] Guardian was a factor in recommending suspended visits because it could lead to continued regression and an increase in sexualized behavior by [] Child. Dr. Wind testified in the event visitation was allowed to resume between Child and Guardian[,] it would need to be supervised by someone with therapeutic training and made part of a trauma focused therapy. The testimony of Dr. Wind was deemed credible and accorded great weight. The testimony of Dr. Wind and the documentation presented to the [c]ourt provided clear and convincing evidence that Guardian's visitation with [] Child constituted a grave threat and was not in the best interest of [] Child and that Guardian's rights to visitation be suspended. Although the issues determined by [the trial court] on November 14, 2016 concerned visitation and differ from those alleged as to the instant appeal, these findings are dipositive for the issues determined by [the trial court] on March 6, 2017, which were the termination of Mother's parental rights and [] Child's goal change to adoption.

At the [t]ermination of [p]arental [r]ights [h]earing on March 6, 2017, [a r]epresentative [from Philadelphia's Community Umbrella Agencies (CUA)] testified that termination of Mother's parental rights was in the best interest of [] Child and would not cause permanent harm. The [trial court] also determined that the Mother was presently incarcerated and that Child had been in the care of numerous foster families since birth[,] and that Mother was unable to address Child's behavioral and medical needs. The CUA [r]epresentative testified that [] Child's behavior had improved since she was separated from Guardian[,] and that there were no signs of [] Child being irreparably harmed by being separated from [] Guardian[.] The CUA [r]epresentative testified that Guardian was unable to meet the therapeutic needs of Child and that it was in [] Child's best interest that [] Child's goal he changed to adoption[.] The [trial court] noted that [s]tay [a]way [o]rders had been issued against [] Guardian to specifically stay

- 13 -

away from [] Child's school and foster home. The CUA [r]epresentative testified about extensive counseling services required by [] Child to which [] Guardian had no involvement. The CUA [r]epresentative testified that in the past[,] Guardian had either not signed consents and/or delayed the signing of consents. The CUA [r]epresentative testified that [] Child's foster parent wanted to adopt her, [] Child's behavior had improved during her time with this pre-adoptive parent[,] and that Child was bonded with her foster parent.

[The trial court] found the testimony of the CUA [r]epresentative to be credible. Based upon the testimony and the documents in evidence, [the trial court] found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§2511(a)(1)[,] (2) and (8)[,] as Mother failed to remedy the conditions that brought [] Child into care. The trial court further concluded that Child, who had been in foster care her entire life, had a strong bond with her pre-adoptive foster parent, and had no bond with Mother, who had been incarcerated for Child's entire life. [Moreover, the trial court concluded that] Child's goal change should be changed to adoption [pursuant to 42 Pa.C.S.A. § 6351]. The [trial court] also noted that [] Guardian had delayed court hearings, harassed foster parents, school officials, and neglected to be actively and positively involved with the medical care of [] Child when provided ample opportunities. These findings clearly demonstrated that it was in the best interest that Child's goal be changed to adoption.

Trial Court Opinion, 6/9/17, at 4-8 (record citations omitted).

We find no error or abuse of discretion by the trial court in terminating the guardianship and denying Guardian visitation with Child. There was no evidence that visitation between Child and Guardian is in Child's best interest. In fact, Guardian does not contest the fact that stay away orders have been entered prohibiting her from going to Child's school and foster home. Guardian's continuously disruptive behavior led the trial court to believe it was in Child's best interest to discontinue visitation with Guardian and change

Child's goal to adoption by the foster parents. We agree. Accordingly, we affirm the trial court's March 6, 2017 orders to the extent that they preclude Guardian from continuing to serve as Child's guardian and/or have visitation with Child.

We now turn to the appeal docketed at 3886 EDA 2016.[5] Guardian is challenging the trial court's order entered on November 14, 2016, following a permanency review hearing for Child. More specifically, Guardian posits that the trial court erred by ordering a therapist to make recommendations as to whether previously suspended visitation should resume between Guardian and Child. On appeal to this Court, Guardian raises the following issue:

> Did the trial court erroneously abrogate Guardian's visitation rights without conducting a full hearing and after considering the testimony of a psychiatrist whose opinion was based entirely upon hearsay that was unmasked as false by cross-examination?

Guardian's Brief (3886 EDA 2016), at 6.

In light of our decision that there was no abuse of discretion or error of law in ultimately terminating the guardianship and visitation at 1185 EDA

---

[5] We note that Child's attorney filed an appellate brief on her behalf, suggesting that this appeal is not properly before us because it lies from an interlocutory, "interim order regarding temporary visitation" and the trial court had "continued the matter to another court date." Brief for Child, at 8. However, our Supreme Court has stated that, "[a]ll orders dealing with custody or visitation, with the exception of enforcement or contempt proceedings, are final when entered." **In re H.S.W.C.-B**, 836 A.2d 908, 911 (Pa. 2003), *citing* Pa.R.C.P. 1915.10. "[A]n appeal may be taken as of right from any final order of a government unit or trial court." Pa.R.A.P. 341(a).

- 15 -

2017, we determine the issue raised at 3886 EDA 2016 is moot.[6]  **_See_**

**_Warmkessel v. Heffner_**, 17 A.3d 408, 412 (Pa. Super. 2011) ("An issue can

become moot during the pendency of an appeal due to an intervening change

in the facts of the case[.]").

Orders at 1185 EDA 2017 affirmed; appeal from order at 3886 EDA 2016

dismissed as moot.  Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/15/18

---

[6]  Guardian even acknowledges that she "concentrate[d] her energies on [the] appeal [at 1185 EDA 2017] since it is from the **dispositive** [o]rder cutting off Guardian's visitation rights."  Guardian's Brief (3886 EDA 2016), at 15 (emphasis added).