**Ronald S. MORGAN, Appellant**

v.

**Mary and James WEISER, Appellees.**

Superior Court of Pennsylvania.

Argued Dec. 6, 2006.
Filed May 7, 2007.

---

Ronald Morgan, Pittsburgh, for appellant.

Laura A. Maines, Pittsburgh, for appellees.

BEFORE: MUSMANNO, BENDER and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 Ronald S. Morgan appeals from the May 8, 2006 order entered in the Court of Common Pleas, Allegheny County, which denied his complaint seeking custody and visitation of M.J.S., a/k/a M.K. (Child) for lack of standing. Upon review, we affirm.

¶ 2 We will first outline the factual and procedural history of this case. Child was born on July 29, 1997. On February 23, 2001, the parental rights of the biological mother, the biological mother's former boyfriend, and unknown father were terminated by final decree. On July 25, 2001, an adoption decree was entered wherein Mary and James Weiser, Child's maternal grandparents became the adoptive parents.

¶ 3 On June 1, 2004, Morgan petitioned the trial court to vacate the termination of his parental rights as unknown father and the adoption decree. The Orphans' Court conducted three days of hearings on Morgan's petition. During the proceedings, the parties stipulated that Morgan was the biological father of Child. On May 4, 2005, the Orphans' Court vacated the termination of Morgan's parental rights as to Child and the decree naming the Weisers as the adoptive parents of Child. The Weisers, the Pennsylvania Office of Children, Youth, and Families, and the guardian *ad litem* for Child appealed the May 4th vacation order. On June 26, 2006, this Court vacated the May 4th order and reinstated the termination and adoption orders. *In the Interest of M.J.S.*, 206 Pa.Su-

per. 154, 903 A.2d 1 (2006). Morgan sought review in our Supreme Court, which was denied. *In the Interest of M.J.S.*, 590 Pa. 660, 911 A.2d 936 (2006).

¶ 4 While the appeal was pending, on May 18, 2005, Morgan filed a complaint for custody of Child in the Allegheny County Court of Common Pleas, Family Division. On June 16, 2005, this Court issued a stay against further proceedings arising from the May 4th order pending the disposition of the appeal. As a result of the stay being issued, Morgan filed a motion for special relief on July 21, 2005, asserting partial custody or visitation based on his *in loco parentis* status arising from his relationship with Child. The trial court conducted hearings on October 6, 2005, and February 22, 2006, on the issue of Morgan's standing. The trial court found that Morgan acted as a parent exercising minimal partial custody and paying minimal child support and that Morgan was presented to Child as her father. In spite of these findings, the trial court concluded that Morgan's relationship with Child amounted to minimal partial custody and did not meet the criteria for *in loco parentis* status and, thus, did not have standing to seek custody. Subsequently, the trial court denied the motion for special relief. Morgan filed a timely notice of appeal. The trial court did not order Morgan to file a 1925(b) statement but did file an opinion addressing his lack of standing.

¶ 5 On appeal, Morgan asks whether he has *in loco parentis* standing to claim custody or visitation of Child where the trial court found that he acted as a parent who is a partial custodian of Child. Appellant's brief, at vi.

¶ 6 Preliminarily, we note that our standard of review of a custody order is of the broadest type, and:

the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*Liebner v. Simcox*, 834 A.2d 606, 609 (Pa.Super.2003) (citing *MacDonald v. Quaglia*, 442 Pa.Super. 149, 658 A.2d 1343, 1345–46 (1995)). The standard of review of a visitation order is the same as that for a custody order. *Id.*, 834 A.2d at 609 (*citing MacDonald*, 658 A.2d at 1346).

 ¶ 7 Clearly, a biological parent whose parental rights were terminated no longer has the custody and visitation rights *of a parent*. This does not mean, however, that there are not circumstances under which that person could seek custody and visitation *as a third party*. As a general rule, third parties, other than grandparents, usually do not have standing to participate as parties in child custody actions. An exception to this general rule exists when the third party stands *in loco parentis* to the child.

 ¶ 8 Morgan's status was that of a third party. *McNamara v. Thomas*, 741 A.2d 778 (Pa.Super.1999) (biological parent whose parental rights have been terminated is third party).[1] He argued he met the requirements of a third party acting *in loco parentis*, and, thus, the trial court

---

1. Once the adoption decree was entered and, subsequently affirmed by our Supreme Court,

the Weisers received the same reciprocal rights and liabilities to Child as those of natu-

abused its discretion in denying him standing. He claimed that the strong parental relationship between him and Child, that the Weisers' facilitation of this relationship, including notifying Child that Morgan was her biological father, and that Child's best interest established that he stood *in loco parentis* to Child.

■■■ ¶ 9 With regard to Morgan's issue of legal standing to seek custody and visitation with Child, we note:

> There is a stringent test for standing in third-party suits for visitation or partial custody due to the respect for the traditionally strong right of parents to raise their children as they see fit. The courts generally find standing in third-party visitation and custody cases only where the legislature specifically authorizes the cause of action. A third party has been permitted to maintain an action for custody, however, where that party stands *in loco parentis* to the child. [ ].
>
> *[I]n loco parentis* is a legal status and proof of essential facts is required to support a conclusion that such a relationship exists. Furthermore, the phrase *"in loco parentis"* refers to a person who puts oneself in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. The rights and liabilities arising out of an *in loco parentis* relationship are, as

the words imply, exactly the same as between parent and child. The third party in this type of relationship, however, can not place himself *in loco parentis* in defiance of the parents' wishes and the parent/child relationship.

*Liebner,* 834 A.2d at 609 (*citing T.B. v. L.R.M.,* 567 Pa. 222, 228, 786 A.2d 913, 916–17 (2001)).

> The *in loco parentis* basis for standing recognizes that the need to guard the family from intrusions by third parties and to protect the rights of the natural parent must be tempered by the paramount need to protect the child's best interest. Thus, while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.

*Liebner,* 834 A.2d at 609–10 (*citing T.B.,* at 230, 786 A.2d at 917).

■■■ ¶ 10 In the present case, Morgan argues that the trial court abused its discretion when it found that, although he acted as a parent with partial custody,[2] he

---

ral parents and their children. *See Faust v. Messinger,* 345 Pa.Super. 155, 497 A.2d 1351, 1353–54 (1985), *appeal dismissed,* 514 Pa. 286, 523 A.2d 741 (1987) ("[T]he intention and result of [adoption] is to enfold an adopted child into its new family so as to be indistinguishable from his new siblings in every possible respect.... [A]ll family relation-

ships are thus reestablished within the adopting family and all ties with the natural family are eradicated."). Accordingly, the Weisers' status was that of biological parents.

2. The terms "partial custody" and "visitation" are often used interchangeably. Each term, however, has a distinct legal meaning.

did not stand *in loco parentis* to Child and, as a result, did not have standing to seek custody or visitation. Morgan based his claim that he obtained *in loco parentis* status on his periods of partial custody of Child on a regular basis.

¶ 11 Keeping Child's best interests in mind, we now turn our attention to the status of *in loco parentis*, *i.e.*, assumption of parental duties, discharge of parental duties, and consent of the natural parents.

 ¶ 12 The trial court stated, "[T]he adoptive parents never consented to a permanent placement of the minor child with Morgan. The visitations allowed were for a few hours at a time and would not constitute permanent placement for the purpose of assumption of parental rights by Morgan. [ ]. Morgan never lived or even had overnight visits with the minor child. His relationship amounted to minimal partial custody, regardless of the fact that the minor child was introduced to him and knew him as her biological father; the relationship did not meet the established criteria for an *In Loco Parentis* status." Trial court opinion, 7/21/2006, at 4. The record reflects this assessment.

An important factor in determining whether a third party has standing is whether the third party lived with the child and the natural parent in a family setting, irrespective of its traditional or nontraditional composition, and devel-

oped a relationship with the child as a result of the participation and acquiescence of the natural parent.

*Bupp v. Bupp*, 718 A.2d 1278, 1281 (Pa.Super.1998) (citation omitted).

¶ 13 In reviewing Morgan and Child's relationship, it is apparent that at no time did Morgan live with Child in a familial setting. His contact with Child was for a few hours at a time, generally on Monday afternoon; this was at the discretion of the Weisers, and their discretion was based upon Child's wishes. N.T., 2/22/2006, at 4–6, 37–38. The time that Morgan spent with Child equated time as a babysitter or caretaker. His early visits with Child included Child's biological mother. His later visits were with Child only. Morgan took Child swimming, fishing, and to a crafts class. N.T., 10/6/2005, at 90–91; N.T., 2/22/2006, at 13. While Morgan had unsupervised visits with Child, he did not assume the status of a parent. The Weisers informed Child in July of 2003 that Morgan was her biological father. However, Child did not refer to Morgan as "Dad" but referred to him as "Ron." *Id.*, at 9. Morgan was not part of family night. *Id.*, at 34. Further, Morgan was not involved in the upbringing of Child. *Id.*, at 13. Other than occasional gifts, he did not provide for the food, clothing, and shelter of Child.[3] He did not provide for medical and dental care nor did he provide input into Child's educational, spiritual, mental,

See 23 Pa.C.S.A. § 5302. Partial custody refers to the right to take possession of a child away from the custodial person for a specified period of time; visitation is the right to visit with a child without physically removing the child from the custodian. *Scott v. Scott*, 240 Pa.Super. 65, 368 A.2d 288 (1976) (Spaeth, J., concurring). With partial custody, the non-custodial parent has no right to share in major decisions that effect the child's life.

We note that the trial court's use of the word "parent" to describe Morgan's actions was of no moment as Morgan's parental rights were terminated and he was seeking *in*

*loco parentis* status as a third party. Further, the trial court did not find that he was a "parent" but only that he acted like a "parent with partial custody."

3. Morgan paid for the swimming lessons, for crafts class, and for one month's Brownies dues. N.T., 2/22/2006, at 13, 35. Morgan claimed that he paid money to the Weisers for the support of Child, N.T., 10/6/2005, at 106–07; the Weisers disputed his claim, N.T., 2/22/2006, at 12. This supports the trial court's conclusion that Morgan paid some support of Child.

or emotional development. *Id.,* at 14–18, 31–32. At no time did Morgan discharge any parental duties regarding Child. *Id.,* at 22 (Morgan did not sign the permission slips for Child's school field trips.). Morgan was not involved in determining the manner to discipline Child, whenever that was necessary. *Id.,* at 30.

¶ 14 Further, a person cannot stand *in loco parentis* to a child in defiance of the natural parent's wishes and the parent/child relationship. *Gradwell v. Strausser,* 416 Pa.Super. 118, 610 A.2d 999, 1003 (1992). In the present case, the Weisers did not permit Morgan to assume parental status or discharge parental duties. In Morgan's motion for special relief, he noted the Weisers' wishes to limit his contact with Child. "[The Weisers'] long-standing opposition to [his] exercise of rights toward [Child] have [ ] been hostile and aggressively absolute. They have made every effort to deny [Morgan] contact, visitation and custody of [Child]. [Morgan] further believes, and therefore avers, that [the Weisers'] interference with his relationship with [Child] extends to extensive disparagement for the purpose of making [Child] uncomfortable with, or afraid of, [Morgan]." Motion of Special Relief, at ¶ 11.

¶ 15 In sum, even though Morgan had unsupervised visits with Child, *i.e.,* partial custody, these visits were akin to babysitting and caretaking as Morgan did not assume parental status and did not discharge any parental duties. *Gradwell,* 416 Pa.Super. 118, 610 A.2d 999. Accordingly, we agree with the trial court that Morgan did not stand *in loco parentis* to Child and, therefore, did not have standing for partial custody or visitation.

¶ 16 Order affirmed.