J-A02003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.M.  V. A.J. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: L.F., | : | |
| | : | |
| Intervenor | : | |
| | : | |
| | : | No. 885 WDA 2020 |

Appeal from the Order Entered July 22, 2020
In the Court of Common Pleas of Erie County
Civil Division at No(s):  10752-2018

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                **FILED FEBRUARY 19, 2021**

L.F. ("Grandmother"), the maternal grandmother of B.J. and A.J., appeals from the trial court's July 22, 2020 order that denied her petition to intervene in the pending custody litigation between A.M. ("Mother") and A.J. ("Father").  We affirm.

B.J. and A.J. were born in 2013 and 2015, respectively.  Between 2016 and 2019, the children resided on Kelso Drive in Erie, Pennsylvania, either as part of an intact family or with Father.  There is no dispute that Grandmother was a fixture in the children's lives during this period and helped Mother and Father care for the children.  After the relationship between Mother and Father deteriorated, Mother moved from the residence and filed a complaint for custody of the children.

On April 19, 2018, Mother and Father entered a consent agreement whereby they agreed to share physical and legal custody of the children. Approximately one year later, Father filed a motion to modify that custody arrangement due to Mother's substance abuse problems. The matter was assigned to the Honorable Elizabeth K. Kelly, who granted the petition on July 23, 2019, and awarded Father sole physical and legal custody of the children. Grandmother continued to assist Father with caring for the children until December 2019.

Meanwhile, on October 29, 2019, Mother filed a petition to modify the July 23, 2019 custody order. While that litigation was pending, Grandmother filed in the orphans' court petitions seeking to be appointed the guardian of the person and the estate of B.J. and A.J. The orphans' court referred the family to the Erie County Office of Children and Youth ("OCY") and appointed Steven George, Esquire as guardian *ad litem*. Thereafter, the custody court scheduled the guardianship and custody matters collectively before Judge Kelly and directed Mother, Father, and Grandmother to submit hair follicle samples for drug testing. After it was reported that Mother and Grandmother failed to comply with the drug testing procedure, the court scheduled a contempt hearing simultaneous with the guardianship and custody matters.[1]

---

[1] The hearing was originally scheduled for April 2020, but was delayed until July 16, 2020 due to the COVID-19 pandemic.

On June 11, 2020, Grandmother filed in the custody court a petition to intervene in the custody proceedings, a motion to dismiss the contempt hearing, and a counterclaim for physical custody of both children. The petitions were scheduled for hearing along with the pending custody and guardianship matters, and on July 16, 2020, Judge Kelly heard evidence from the guardian *ad litem*, the OCY caseworker, Father, and Grandmother's counsel concerning all of the pending petitions. Grandmother and Father presented competing narratives regarding the level of Grandmother's interaction with the children. The guardian *ad litem* opined that guardianship was not appropriate in this case, but he noted that Grandmother played a substantial role in caring for the children and believed that her continued contact with B.J. and A.J. would serve the children's best interest. Significantly, however, the guardian *ad litem* intentionally avoided opining on whether Grandmother stood *in loco parentis* to the children, highlighting that the extent of her involvement, whether as a mere helper or a *de facto* parent, was still under dispute.

In open court, Judge Kelly denied Grandmother's petition for guardianship and dismissed the contempt petition. N.T., 7/16/20, at 8, 10. After taking the matter relating to Grandmother's standing under advisement, Judge Kelly entered the above-referenced order denying Grandmother's petition to intervene.

This timely appeal followed, wherein Grandmother complied with Pa.R.A.P. 1925(a)(2)(i) by contemporaneously filing a concise statement of errors complained of on appeal. The trial court entered an opinion pursuant to Pa.R.C.P. 1925(a). Grandmother presents three issues for our review:

> I. Whether the trial court committed an error of law and/or abused its discretion in denying the motion to intervene, where the testimony, including that of the guardian *ad [l]item*, established that [Grandmother] parented the children along with the Appellee/Father, thus establishing standing pursuant to 23 Pa.C.S. section 5324(2) (*in loco parentis* standing).
>
> II. Whether the trial court committed an error of law and/or abused its discretion in denying the motion to intervene pursuant to 23 Pa.C.S. section 5325(2) (standing for partial custody or visitation), where [Grandmother] had a prior relationship with the children with the consent of the parents, the parents initiated the custody action, and the parents do not agree whether [Grandmother] should have partial custody or visitation.
>
> III. Whether the trial court committed an error of law and/or abused its discretion in disregarding the testimony of the guardian *ad litem* as to [Grandmother's] history and relationship with the children and that it would be in the children's best interest for movant to have some form of partial custody.

Grandmother's brief at 3-4 (unnecessary capitalization omitted).[2]

Our standard of review is well-settled.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether

---

[2] Neither Father, Mother, nor the guardian *ad litem* filed a brief in this appeal.

the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa.Super. 2012) (citations omitted).

Grandmother's issues implicate her standing to participate in the custody litigation between Mother and Father. In child custody cases, the concept of standing differs from the typical determination regarding whether a party has a direct interest in the outcome of litigation. As this Court explained,

> In the area of child custody, principles of standing have been applied with particular scrupulousness because they serve a dual purpose: not only to protect the interest of the court system by assuring that actions are litigated by appropriate parties, but also to prevent intrusion into the protected domain of the family by those who are merely strangers, however well-meaning.

*D.G. v. D.B.*, 91 A.3d 706, 708 (Pa.Super. 2014) (quoting *J.A.L. v. E.P.H.*, 682 A.2d 1314, 1318 (Pa.Super. 1996)).

Grandmother invokes two separate standing provisions under the Child Custody Law. First, as it relates to standing to exercise any form of physical custody or legal custody, the Child Custody Law extends standing to, *inter alia*, "A person who stands *in loco parentis* to the child." 23 Pa.C.S. § 5324(2). We previously explained,

> A person stands *in loco parentis* with respect to a child when he or she assumes the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. Critical to our discussion here, *in loco*

- 5 -

*parentis* status cannot be achieved without the consent and knowledge of, and in disregard of, the wishes of a parent.

**K.W. v. S.L.**, 157 A.3d 498, 505 (Pa.Super. 2017).[3]

Second, the Child Custody Law provides grandparent standing for partial physical custody and supervised physical custody as follows:

> In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:
>
> (1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;
>
> (2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:
>
>> (i) have commenced a proceeding for custody; and
>>
>> (ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section; or
>
> (3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5325

---

[3] Grandmother does not assert standing under any of the remaining subparagraphs, including the provision that addresses a grandparent who is not in *loco parentis*, *i.e.*, 23 Pa.C.S. § 5324(3).

In sum, Grandmother argues that the trial court abused its discretion in concluding that the evidence presented during the custody hearing did not warrant finding that she stood *in loco parentis* pursuant to 23 Pa.C.S. § 5324(2). She contends that, for three years, she assisted Mother and Father in raising the children until Father obtained sole custody and precluded contact. In support of this position, Grandmother highlights the fact that B.J. remained in the school district designated for her residence even though Father was awarded physical custody, presumably in a different district.

As to § 5325(2), Grandmother asserts that her relationships with the children began with the consent of Mother and Father, who have commenced a proceeding for child custody and do not agree as to whether she should exercise custody. The first two prongs of this subsection are not in dispute. In support of the determinative final prong, Grandmother's counsel argued during the hearing, "presently the mother is allowing contact by phone between the grandmother and the children, while the father has refused all contact since December of 2019." N.T., 7/16/20, at 14.

Finally, Grandmother argues that the trial court erred in disregarding the testimony of the guardian *ad litem* concerning the benefits of her continued contact with the children. Specifically, Grandmother contends, "the testimony of the [guardian *ad litem*] . . . confirmed that . . . Father and Maternal Grandmother were the two parties working together to raise the

children, and that it would be in the children's best interest to have a schedule with Maternal Grandmother." Grandmother's brief at 19.

After a thorough review of the certified record, Grandmother's brief, and the pertinent law, we fully agree with the cogent and well-reasoned opinion entered on September 4, 2020, by the Honorable Elizabeth K. Kelly. Specifically, as it relates to Grandmother's three arguments, Judge Kelly concluded that (1) in light of Father's credible testimony to the contrary, Grandmother's interactions with B.J. and A.J. did not constitute the assumption of parental status with Father's consent; (2) Mother's willingness to permit the children's telephone contact with Grandmother is not tantamount to evidence of her agreement to Grandmother exercising physical custody; and (3) notwithstanding his observations about the children's best interests, the guardian *ad litem* specifically declined to speculate about the threshold determination concerning whether Grandmother stood *in loco parentis* with the children. **See** Trail Court Opinion, 9/4/20, at 4-9. We adopt Judge Kelly's reasoning as our own in affirming the denial of Grandmother's petition to intervene.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/2021

Received 9/11/2020 3:08:54 PM Superior Court Western District

Filed 06/29/2021e12:34 PM

Filed 9/11/2020 3:08:54 PM Superior Court Western District
885 WDA 2020

| | | |
|---|---|---|
| **AMBER MOWREY,** | : | **IN THE COURT OF COMMON PLEAS** |
| **Plaintiff** | : | **OF ERIE COUNTY, PENNSYLVANIA** |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **ARMANDO JIMENEZ,** | : | |
| **Defendant** | : | **NO. 10752 – 2018** |

## OPINION

**September 3rd, 2020:** This child custody matter is before the Court on the appeal of Lori Ferguson from a July 22, 2020 Order denying her Petition to Intervene and Counter-Claim for Custody. Ms. Ferguson filed the Petition in the custody action regarding her two grandchildren, B.J., now seven years old, and A.J., 5 years old (hereinafter "the Children").

## PROCEDURAL HISTORY

On March 20, 2018, Amber Mowrey (hereinafter "Mother") filed a Complaint for Custody against Armando Jimenez (hereinafter "Father") requesting primary physical custody of the Children. The parties, by a consent order entered April 19, 2018, agreed to an order whereby they would share legal and physical custody of the Children. Pursuant to the April 19, 2018 Order of Court, Mother was to exercise physical custody every Monday through Thursday with Father exercising custody every Thursday through Monday.

On April 9, 2019, Father filed a Modification Petition. Father alleged that the best interest of the children would be served by modification of the order due to safety concerns, including B.J. being returned to First Student as Mother was not home when the bus dropped him off from school. Following a July 23, 2019 Custody Trial, the undersigned issued a July 23, 2019 Order granting

1

Father sole legal and physical custody of the Children[1].

Mother, on October 29, 2019, filed a Modification Petition requesting primary physical custody of the Children. Mother and Father attended a November 19, 2019 custody conference at which they were unable to reach an agreement regarding custody. Accordingly, the matter was forwarded to court for a custody trial. The case was scheduled in the Custody Trial Term occurring during the week of January 27, 2020.

Meanwhile, on December 23, 2019, Ms. Ferguson filed a Petition for Appointment of Guardian of the Person and/or Estate of a Minor requesting guardianship of each of the Children. Following a January 16, 2020 hearing, the undersigned issued an order of the same date continuing the hearing to April 13, 2020, referring the matter to the Erie County Office of Children and Youth for investigation and appointing Steven George, Esquire as Guardian Ad Litem for both of the Children.[2]

By Order of Court filed January 30, 2020, the Honorable Joseph M. Walsh, III ordered Mother, Father and Ms. Ferguson all to submit to drug testing and ordered the custody trial on Mother's Modification Petition to be heard simultaneously with the April 13, 2020 guardianship hearing. The custody and guardianship hearings were ultimately continued to July 16, 2020 due to the global COVID-19 pandemic.

Meanwhile, Ms. Ferguson, on June 11, 2020, filed her Petition to Intervene and Counter-Claim for Custody alleging that she had standing to intervene.

---

[1] At the Custody Trial, Father testified to Mother's drug use, her eviction from her apartment, and her association with a man who hit B.J. Father further testified that the Children had been fully in his custody for over month, with Mother visiting the Children at times. Father acknowledged that Ms. Ferguson was helping him with the Children.

[2] As noted in the January 16, 2020 Orders in Orphans' Court, the matter was referred to the Erie County Office of Children and Youth based upon significant allegations of parental abuse and neglect of the Children and unstable housing, as well as allegations that all parties, including the proposed guardian, Lori Ferguson, were drug addicted and using the Children for financial gain.

2

Following the July 16, 2020 hearing, the undersigned issued orders denying each Petition for Appointment of Guardian of the Person and/or Estate of a Minor, as well as the Petition to Intervene and Counter-Claim for Custody.

In her Statement of Matters Complained of on Appeal, Ms. Ferguson makes the following allegations of error:

> 1. The Trial Court committed an error of law and/or abused its discretion in denying the Motion to Intervene where the testimony, including that of the Guardian ad Litem, established that Movant, Lori Ferguson, parented the children along with Defendant/Father, thus establishing standing pursuant to 23 Pa.C.S. §5324(2)(*in loco parentis standing*).
> 2. The Trial Court committed an error of law and/or abused its discretion in denying the Motion to Intervene pursuant to 23 Pa.C.S. §5325(2)(standing for partial custody or visitation), where the Movant had a prior relationship with the children with the consent of the parents, the parents initiated the custody action, and the parents do not agree whether Movant should have partial custody or visitation.
> 3. The Trial Court committed an error of law and/or abused its discretion in disregarding the testimony of the Guardian ad Litem as to the Movant's history and relationship with the child and that it would be in the children's best interest for Movant to have some form of partial custody.

## DISCUSSION

All of Ms. Ferguson's allegations of error are based upon the decision of this court not to allow her to intervene in the custody dispute between the Children's parents. With regard to standing in a custody action, the Pennsylvania Supreme Court has outlined the general principals as follows:

> The fundamental concept of standing ensures that a party seeking to litigate a matter has a substantial, direct, and immediate interest in the subject-matter of the litigation. "In the area of child custody, principles of standing have been applied with particular scrupulousness[.]" This stringent application of standing principles serves to protect both the interest of the court system by ensuring that actions are litigated by appropriate parties and the interest in keeping a family unit free from intrusion "by those that are merely strangers, however well-meaning." Indeed, in evaluating whether a Washington state statute conferring standing to "any person" to seek visitation of children, the United States Supreme Court has recognized the significant interest at stake in the context of persons seeking judicial intervention to gain visitation or custody of children. "The liberty interest ... of parents in the care,

3

custody and control of their children is perhaps the oldest fundamental liberty interest recognized by this Court." In Pennsylvania, Section 5324 of the Domestic Relations Code limits the classes of persons deemed to have a substantial, direct, and immediate interest in the custody of children by conferring standing only upon "(1) a parent of the child[;] (2) a person who stands in loco parentis to the child[; and] (3) a grandparent of the child who is not in loco parentis to the child[,]" under certain circumstances. Determining standing in custody disputes is a threshold issue that must be resolved before proceeding to the merits of the underlying custody action. It "is a conceptually distinct legal question which has no bearing on the central issue within the custody action who is entitled to physical and legal custody" of a child in light of his or her best interests. Issues of standing are questions of law; thus, the standard of review is de novo and the scope of review is plenary.

*C.G. v. J.H.*, 193 A.3d 891 (Pa. 2018) (citations omitted).

Ms. Ferguson first alleges that the court erred by denying her request to intervene "where the testimony, including that of the Guardian ad Litem, established that Movant, Lori Ferguson, parented the children along with Defendant/Father, thus establishing standing pursuant to 23 Pa.C.S. §5324(2)(*in loco parentis* standing)."

A person who stands *in loco parentis* to a child may file a custody action to pursue any form of physical or legal custody of the child. *See* 23 Pa.C.S.A. §5324(2). "[T]he phrase '*in loco parentis* refers to a person who puts himself [/herself] in the situation of assuming the obligation incident to the parental relationship without going through the formality of a legal adoption." *D.G. v. D.B.*, 91 A.3d 706 (Pa. Super. 2014) quoting *Argenio v. Fenton*, 703 A.2d 1042, 1044 (Pa.Super.1997). The legal status of *in loco parentis* requires the individual claiming the status to prove their: (1) assumption of parental status; and (2) discharge of parental duties. *See id.; see also C.G.*, 193 A.3d at 907. "The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child." *D.G. v. D.B.*, 91 A.3d at 708-09 *quoting Morgan v. Weiser*, 923 A.2d 1183, 1187 (Pa.Super.2007).

At the July 16, 2020 hearing, Ms. Ferguson, through counsel, set forth that B.J. lived with her from birth until the age of two, that Mother and both Children resided with her for several years

4

after that, that the Children were with her all week long after Mother got her own apartment and that Father shared custody with her once he was granted sole custody of the Children. Ms. Ferguson further set forth that she provided substantial financial support for the Children when they resided with her, that she provided B.J. with school clothes, that she drove the Children to almost every doctor and dental appointment until the Summer of 2019 and that she would have to leave work to pick the Children up from school because the parents failed to do so.

Contrary to the picture painted by Ms. Ferguson's counsel, Father represented that Ms. Ferguson has assisted as a grandmother, while he and Mother shared custody of the Children. Father asserted that Ms. Ferguson's representation that the Children lived with her was a lie. Father testified that once Mother moved out of Ms. Ferguson's home that he, Mother and the Children lived together. He further asserted that Ms. Ferguson saw the Children on weekends but that the relationship evolved to the point that, when she did take the Children for visits, she only wanted one child at a time or asked for Father to come and play with one while she interacted with the other because it was too much for her to have both of the Children at the same time.

The documents filed of record throughout these proceedings lend credibility to Father's testimony. Specifically, long before Ms. Ferguson requested to intervene in the custody action, Mother and Father consistently represented that the Children resided with them as an intact family unit since at least 2016. First, when Mother, on March 20, 2018, filed the Complaint for Custody initiating the custody proceedings, she set forth that the Children resided with both parents at 411 Kelso Drive #53 from November 25, 2016 through March 5, 2018 and that, thereafter, the Children continued to reside with Father at the Kelso Drive address. By the time that Father filed his Modification Petition on April 9, 2019, both parents' addresses had changed, however, consistent with Mother's representation in her Complaint for Custody, Father represented that the Children

5

resided with both parents at 411 Kelso Drive #53 in 2017 and 2018. There is no mention of Ms. Ferguson during this time, nor was there any attempt by her to intervene.

With regard to Ms. Ferguson leaving work to pick up the Children from school, it is noteworthy that Father, in April of 2019, filed a Petition for Modification indicating that the best interests of the Children would be served by granting him custody due to the safety concern of Mother not being home when B.J. arrived home through First Student. Moreover, while grandmother may have provided transportation for the Children to medical and dental appointments, the Court cannot ignore Father's testimony from the January 16, 2020 guardianship hearing which demonstrated that he was very much aware of what was going on with the Children's health and B.J.'s dental needs, indicating that he was substantially involved in such care.

There is no doubt that Ms. Ferguson assisted Father with the Children when he first assumed sole physical custody. Father testified to such at the July 23, 2019 Custody Trial. Moreover, based upon his meetings with the parties, the GAL testified that, because of Mother's serious drug addiction, Ms. Ferguson stepped into a "mother-like role." Nevertheless, Attorney George immediately qualified his statement to indicate that he did not identify Ms. Ferguson's role in terms of standing, but was simply saying that Father worked directly with Ms. Ferguson who provided some care for the Children.

Ms. Ferguson's actions in helping out with her grandchildren are commendable. They do not, however, rise to the level of the assumption of parental status. Even if B.J and Mother resided with Ms. Ferguson until B.J. was two years old, Father's credible testimony indicates that custody was between the parents thereafter. Once Father assumed sole custody, Ms. Ferguson helped out with the Children, including taking them to her house at times on the weekends. Nevertheless, even that diminished as Ms. Ferguson's desire to take only one child at a time became upsetting to the Children. Providing the Children with occasional shelter, some financial support, and transportation

6

to and from medical appointments does not confer *in loco parentis* status. *See D.G. v. D.B.*, 91 A.3d at 711-12(grandmother did not stand in loco parentis to child, despite child and mother residing with grandmother for 2 separate time periods, grandmother exercising custody every other weekend upon mother and grandchild moving out, grandmother doing the grandchild's laundry and providing meals to mother and grandchild, and grandmother taking grandchild to medical appointments). As Ms. Feguson's actions are more akin to assistance in a time of need, rather than assuming parental status, a grant of *in loco parentis* status is not warranted.

In her second allegation of error, Ms. Ferguson contends that the court committed an error of law and/or abused its discretion in denying intervention pursuant to 23 Pa.C.S. §5325(2). Pursuant to the Domestic Relations Code, a grandparent has standing to file an action for partial physical custody or supervised physical custody, in relevant part, as follows:

> (2) where the relationship with the child began either with the consent of a parent of the child or under a court order and where the parents of the child:
> (i) have commenced a proceeding for custody; and
> (ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section;

23 Pa.C.S.A. §5325(2).

While the parties disagree on the extent of Ms. Ferguson's relationship, it is uncontroverted that Ms. Ferguson and the Children have a relationship which began with the consent of the parents. Furthermore, it is clear that there is active litigation between Mother and Father regarding custody of the Children. Nevertheless, the only evidence that Ms. Ferguson presented to show that the parents do not agree as to whether she should have custody, is that, while Father has denied Ms. Ferguson contact with the Children, Mother has allowed her telephone contact with the Children. The mere fact that Mother has allowed Ms. Ferguson to have contact with the Children via phone in no way presents a clear desire by Mother for Ms. Ferguson to have some form of physical custody of the Children. After all, Father clearly asserts his opposition to Ms. Ferguson having custody, yet

7

he also attempted to maintain a relationship between Ms. Ferguson and the Children via phone. It is further noteworthy that Mother, who was not present at the July 22, 2020 hearing where Ms. Ferguson set forth her assertion of Mother's position, clearly set forth at the January 16, 2020 hearing her belief that she and Father should share custody and that Ms. Ferguson should have no custody. In that regard, Ms. Ferguson has not demonstrated that the parents do not agree as to whether she should have custody; to the contrary, the parents appear to agree that Ms. Ferguson should not have physical custody of the Children. Accordingly, all elements of Section 5325(2) were not satisfied and it was appropriate to deny Ms. Ferguson standing to intervene pursuant to the same.

In her final allegation of error, Ms. Ferguson alleges that the court erred by disregarding the testimony of the Guardian ad Litem as to her history and relationship with the Children and that it would be in the Children's best interest for her to have some form of partial custody.

Attorney George was appointed as the Guardian Ad Litem in the guardianship proceedings. At the July 16, 2020 hearing, he made it clear that his testimony was in terms of the guardianship proceeding, that his comments were not made in terms of standing for custody and, while some form of contact with Ms. Ferguson would probably be appropriate, it was a matter to be litigated in the custody proceeding. After Ms. Ferguson presented her case to intervene, the undersigned prompted Attorney George for his opinion on the matter. Attorney George again qualified his response to indicate that he was not offering his opinion as to whether Ms. Ferguson met her legal burden, however, he opined that, since Ms. Ferguson had a significant role, some contact with the Children would be appropriate.

The court did not disregard Attorney George's testimony. Instead, as Attorney George acutely noted, his opinion was not one which could go to whether or not Ms. Ferguson met her legal burden for standing. Standing is a distinct legal issue from the best interest analysis. *See M.S. v.*

8

*J.D.*, 215 A.3d 595, 601-02 (Pa. Super. 2019); *see also C.G.*, 193 A.3d at 898 and 909-10 (noting that standing is a distinct legal question with no bearing on the central issue within the custody action, the Supreme Court of Pennsylvania concluded that the existence of a bond between the child and the mother's same-sex unmarried former partner was not a required factor for consideration as to whether the former partner stood in loco parentis to the child). In that regard, the Guardian Ad Litem's opinion on some form of contact serving the Children's best interest does not get Ms. Ferguson past the threshold requirement that she have standing to proceed. Accordingly, Ms. Ferguson's final allegation of error is without merit.

For the foregoing reasons, the July 22, 2020 Order should be affirmed.

**BY THE COURT:**



Elizabeth K. Kelly, Judge

cc:    Stacey K. Baltz, Esquire
Steven George, Esquire
Amber Mowrey, 728 West 17th St., Erie, PA 16502
Armando Jimenez, 1156 West 28th St., Erie, PA 16508
Custody Office

9